## INDEPENDENCE INDEMNITY CO. v. SANDERSON.

### No. 6558.

Circuit Court of Appeals, Ninth Circuit.

March 21, 1932.

Rehearing Denied April 28, 1932.

John Ralph Wilson, of San Francisco, Cal., for appellant.

Daniel A. Ryan and Thomas C. Ryan, both of San Francisco, Cal., for appellee.

Before WILBUR and SAWTELLE, Circuit Judges, and McCORMICK, District Judge.

SAWTELLE, Circuit Judge.

As stated by appellant, "this is an action upon a policy of liability insurance wherein the injured party and judgment creditor seeks to recover from the insurance carrier the amount of a judgment obtained against the assured. The defense is based upon the violation of provisions of the policy by the assured."

The policy referred to, dated December 23, 1929, was issued by appellant to Mrs. Maud S. Mallett of Berkeley, Cal., owner of a certain Buick automobile, and insured her against loss arising out of accidents to any person or persons for which the said owner is liable for damages. On January 29, 1930, said automobile was operated by Helen Mallett with permission of her mother, said Mrs. Maud Mallett, and on that date, due to the negligence of Helen Mallett in the operation of said automobile, appellee, father of Mrs. Mallett, sustained injuries to his person. Appellee brought an action in the state court against Mrs. Mallett and Helen Mallett based upon the negligence aforesaid, and recovered a judgment against them for the sum of $5,-504.

In the complaint filed in the instant case, appellee sets forth the same allegations of negligence, recovery of the judgment in the

**126**

state court against the defendants therein, issuance of the liability policy to Maud Mallett by the appellant, and prays judgment against the latter for $5,504, together with interest thereon from September 23, 1930.

The liability policy was obtained by Mrs. Mallett through the California State Automobile Association. It contains the usual provisions with reference to notice of accidents, and the like. On the front of the policy as delivered to the assured is a printed notice as follows: "Important. For information regarding this policy or in the event of loss, communicate with the nearest office of the California State Automobile Association, general office 150 Van Ness Avenue, San Francisco."

On the first or second day after the accident in question, assured, by telephone, notified the said association of said accident and was requested by the latter to send in a detailed written report, which she did on February 8. The said association thereafter wrote the assured the following letter:

"California State Automobile Association
"150 Van Ness Avenue,
"San Francisco, California.

"Feb. 14, 1930.
"Re:—Claim #PB—24995.
"Mrs. Maud S. Mallett, 2905 Pine Avenue, Berkeley, California.
"Dear Madam: We wish to acknowledge receipt of your letter of Feb. 8th, reporting an accident in which injuries were sustained by your father, while the car was being operated by your daughter.

"At this time, we wish to advise that the adjustment of this case has been referred to the Independence Indemnity Co., 340 Pine Street, San Francisco, and they will conduct all future negotiations, in view of the fact that they are the carriers of your Public Liability insurance.

"Regretting the occurrence of this misfortune and assuring you of our pleasure to be of service at all times, we are,
"Yours very truly,
"W. McMahon, Adjuster."

The complaint filed by appellee against Mrs. Mallett in the state court was forwarded by her to the appellant, Independence Indemnity Company, as required by the terms of the policy. The claims superintendent of that company, whose duties were the supervision and handling of all claims against the company, wrote Mrs. Mallett a letter to this effect:

"May 8, 1930.
"Mrs. Maud S. Mallett, 2905 Pine Avenue, Berkeley, Calif.
"Dear Madam:
"Re:3–AL–351.
"A. A. Sanderson vs. Helen T. Mallett et al.
"This will acknowledge a copy of the complaint served in connection with the above action.

"In order that you may understand the position of our company, please consider the following as a statement of the conditions under which we will defend you in connection with this claim.

"We will investigate said accident, negotiate settlement of claims arising therefrom, and defend any suits brought against the Assured by any person claiming to have been injured or damaged as a result of such accident, without cost to the Assured, subject to all the conditions, limitations and agreements in said policy; all subject to the express understanding, however, that by so doing the Company does not waive its policy or legal rights to rely upon the policy provisions, and does not agree to pay any settlement that may be negotiated, or any judgment that may be rendered against the assured.

"It is understood, however, that the execution of this agreement by the Company, or any act or statement of any representative of the Company in performing said agreement, shall not be considered as an assumption of liability for such accident by the Company or as a waiver of any of the Company's rights under the policy, or as a waiver of the disclaimer of liability heretofore made, or to operate by way of estoppel against the Company's assertion of any such rights in any litigation which may be brought by the Assured, or any other person, firm, or corporation, against the Company to recover under said policy for loss and/or expense, arising out of said accident.
"Yours very truly,
"R. H. Morrison, Claims Supt."

Thereafter, the indemnity company, at its own expense, employed an attorney to represent the assured in the case of Sanderson v. Mallett in said state court, and said attorney represented her at the trial therein and in all subsequent proceedings.

Pursuant to the law of California there was attached to the policy the following endorsement:

"The Policy to which this endorsement is attached is amended to conform with the requirements of Chapter 259, Laws of 1929,

of the State of California, and all laws amendatory thereof or supplementary thereto which may be or become effective while this Policy is in force, as respects any liability for bodily injury or death covered by this Policy, but only to the extent of the coverage and the limits of liability required by said Chapter and only with respect to the motor vehicles disclosed in the Policy.

"It is further agreed that to the extent of the coverage required by said Chapter and within the limits stated in said Chapter, this Policy is subject to the following additional provisions:

"(a) The liability of the Company under this Policy shall become absolute whenever loss or damage covered by the Policy occurs, and the satisfaction by the Insured of a final judgment for such loss or damage. Upon the recovery of a final judgment against the Insured for any such loss or damage the judgment creditor shall be entitled to have the insurance provided by this endorsement applied to the satisfaction of the judgment. * * *

"Nothing herein contained shall be held to waive, alter, vary or extend any of the conditions, agreements or limitations of this Policy, other than as above stated.

"This endorsement, issued by the Independence Indemnity Company, when countersigned by a duly authorized official or agent of the Company, and attached to Policy No. 044842 issued to Maud S. Mallett of Berkeley, Calif., shall be valid and shall form part of the Policy."

Appellant contends that, notwithstanding the provisions contained in this indorsement, it is not liable to appellee. This contention is based upon the proposition that the insured, subsequent to the accident, violated certain conditions and provisions of the policy, and that the injured party's [appellee's] rights under the policy are no greater than the rights of the assured, and that this is especially true where the insurer, as was done in this case by said letter of May 8, notified the assured before undertaking the defense of the action brought by the injured person, that it would "defend the action under a full reservation of all rights."

Appellee, on the other hand, contends that appellant's allegations are without merit, and that under the terms of the policy, as modified by the laws of California, liability attached upon the occurrence of the accident, and that nothing which either the assured or the appellant may do will relieve the latter of liability to the judgment creditor. However, appellee says that the authorities cited by the appellant as sustaining the proposition are not applicable here.

"Other cases cited by appellant are not applicable here, for the reason *that there has been a full compliance by Mrs. Mallett with all of the terms and conditions of the policy as found by the trial court.* Under the findings, which are fully sustained by the evidence, Mrs. Mallett could recover from the appellant in accordance with the terms of the policy. In that particular, *we do not contend for any distinction, between the right of the assured, Mrs. Mallett, and the injured person, Judge Sanderson."* (Second italics our own.)

This concession by the appellee and the statement by appellant that "the defense is based upon the violation of provisions of the policy by the assured" make it unnecessary for us to construe the above-quoted California Financial Responsibility Act set forth in the indorsement attached to the policy.

To establish its defense appellant further states that it relies upon the testimony of Mrs. Mallett herself and certain letters written by or for her and introduced in evidence, that such testimony and evidence shows that she violated sections 3 and 4 of the policy. These sections are as follows:

"Prompt Notice of Claims.

"3. Upon the occurrence of any accident covered by this Policy, the Insured shall give immediate written notice thereof to the Company at its Home Office, and forward to the Company forthwith after receipt thereof every process, pleading and paper of any kind relating to any and all claims, suits and proceedings.

"Settlement of Claims.

"4. The Insured shall make no settlement of any claim arising hereunder, nor incur any expense, without the written consent of the Company. The Insured shall co-operate fully with the Company in disclosing all the facts known to him about the happening of every accident, the making of every claim and the filing of every suit, and also shall testify if required, render his aid in the securing of evidence, the attendance of witnesses at a trial or hearing and in the prosecution of an appeal in the event one is taken. The Insured shall not in any way acknowledge or admit any liability on account of any accident, nor settle any claim or suit resulting therefrom, nor aid or abet the claimant, nor without the consent of the Company in-

cur any expense other than for such immediate medical or surgical aid as is imperative at the time of the accident."

First we shall consider the question of notice of the accident. It is admitted by appellee that the written notice of the accident was not given by the assured directly to the appellant, but it is contended that the notice addressed to the California State Automobile Association, which was by the latter delivered to the appellant in due course, was legally sufficient, especially in view of the fact that the appellant was given full opportunity to make an investigation of the facts and to defend the suit in the state court.

It will be observed that the above-quoted section 3 required the insured to give immediate notice of the accident. In the case of New Jersey Fidelity & Plate Glass Insurance Co. v. Love, 43 F.(2d) 82, 85 (C. C. A. 4), cited by appellant, the policy contained a provision requiring the insured, in the event of a suit, to "immediately" forward to the company every process served upon her. The court in that case, in defining the word "immediately," said: "It is true that while the process is required to be 'immediately' forwarded, nevertheless the word 'immediately' is not given a rigid construction, but means that the process must be forwarded within a reasonable time *under all the circumstances of the case.* Fidelity & Deposit Co. v. Courtney, 186 U. S. 342, 345, 22 S. Ct. 833, 46 L. Ed. 1193." (Italics our own.)

In the above-cited case of Fidelity & Deposit Co. v. Courtney, 186 U. S. 342, 346, 22 S. Ct. 833, 835, 46 L. Ed. 1193, the court quoted from the case of Ward v. Maryland Casualty Co., 71 N. H. 262, 51 A. 900, 93 Am. St. Rep. 514, as follows: "'The defendants' liability depends in part upon the answer to the questions whether the plaintiffs gave them "immediate" notice in writing of O'Connell's accident, the claim made on account of it, and the suit that was brought to enforce the claim. This involves an ascertainment of the meaning of the word "immediate" as used in the policy. The word, when relating to time, is defined in the Century Dictionary as follows: "Without any time intervening; without any delay; present; instant; often used, like similar absolute expressions, with less strictness than the literal meaning requires,— as an immediate answer." It is evident that the word was not used in this contract in its literal sense. It would generally be impossible to give notice in writing of a fact the instant it occurred. It cannot be presumed that the parties intended to introduce into the

contract a provision that would render the contract nugatory. As "immediate" was understood by them, it allowed the intervention of a period of time between the occurrence of the fact and the giving of notice more or less lengthy according to the circumstances. The object of the notice was one of the circumstances to be considered. If it was to enable the defendants to take steps for their protection that must necessarily be taken soon after the occurrence of the fact of which notice was to be given, a briefer time would be required to render the notice immediate according to the understanding of the parties than would be required if the object could be equally well attained after considerable delay. For example, a delay of weeks in giving notice of the commencement of the employee's suit might not prejudice the defendants in preparing for a defense of the action, while a much shorter delay in giving notice of the accident might prevent them from ascertaining the truth about it. The parties intended by the language used that the notice in each case should be given so soon after the fact transpired that, in view of all the circumstances, it would be reasonably immediate. If a notice is given "with due diligence under the circumstances of the case, and without unnecessary and unreasonable delay," it will answer the requirements of the contract. [Cases cited.] *Whether the notices were reasonably immediate,—like the kindred question of what is a reasonable time,—are questions of fact that must be determined in the superior court.* [Cases cited.]'" (Italics our own.)

As above stated, the automobile association by letter advised Mrs. Mallett that the adjustment of the case had been referred to the appellant, Independence Indemnity Company, who would conduct all further negotiations. There is no claim by the appellant that this report was not received in due course. The claim is that the notice was not given to the appellant immediately after the accident as required by the terms of the policy.

The object of section 3 was to afford the company an opportunity to investigate the accident and defend any suit brought against itself or the insured, and we are of the opinion that the oral and written notices above referred to were sufficient for that purpose, and that same were given within a reasonable time after the accident.

Appellant refused to pay the judgment rendered against the assured on the further ground that the assured violated section 4

of the policy and in particular that she, as nominal defendant, aided and abetted appellee in his effort to collect damages, and that such violation by the assured bars a recovery on the policy by appellee, the injured person. As above stated, appellant relies upon the testimony of Mrs. Mallett herself to establish its defense. She was called as a witness in the instant case by the appellant and testified in its behalf. She testified that, within a few days after the receipt of a letter from the association, she telephoned the appellant and asked why they had not responded to the notification they had received from the automobile association, and that she got no satisfaction from them (this is not denied) ; that she thereupon, in writing, notified the company that the automobile association had informed her that they had turned the matter of her insurance over to them for adjustment, and that she had placed the matter in the hands of Mr. Finlay Cook of San Francisco, an associate of her father in the legal profession, and referred them to him in any matter concerning the adjustment of the claim under the policy. She further testified that she had a conversation with Mr. Down, adjuster for the indemnity company, who criticized her for having consulted Mr. Cook about the matter, and that she explained to Mr. Down that the sole reason she had done so was the fact that she was leaving town and, having received no word from the insurance company, she had taken the policy to Mr. Cook so that he might represent her during her absence, not as an attorney, but merely as a friend of the family; that later, another adjuster representing the company came and asked her for a statement in writing, which she gave him; that she gave the representative of the company the names of all the witnesses that she knew of and told them all she knew about the accident. She also testified that she was not an eyewitness thereto.

The evidence chiefly relied upon by appellant as showing that assured aided and abetted the appellee in an endeavor to collect damages from appellant is:

1. The letter of February 8 written by assured to the automobile association. This letter contains a written report of the accident and the injuries received by the appellee. Therein is recited the fact that appellee's left arm was broken, that he was then confined in a hospital, and that up to that time he had expended $250 for hospital expenses, and that he was 82 years old. The letter also gave the name of the hospital in which appellee was confined, the name of the physician in charge, and concluded: "Any further information you desire will be freely furnished you whenever you desire."

2. The letter of February 19 from assured to appellant in which she advised the latter that she had been informed by the automobile association that they had turned the matter of her insurance over to appellant for adjustment, and that she had placed the matter in the hands of Mr. Finlay Cook.

Mr. Cook, who was also called on behalf of the defendant, testified that he was never employed by assured, and that he never acted for her in any capacity; that the only thing he was to do was to hold himself in readiness to act as a medium of communication between her and the company in the event that they wished to communicate with her during her absence.

3. The letter of March 31 from assured (at appellee's request) setting forth in some detail appellee's loss and injuries and reciting: "Today for the first time my father has spoken to me fully of the compensation he will accept for the injury, if settled without delay and with the understanding that if his offer of such compromise settlement is not accepted this proposition shall not be used to the advantage or disadvantage of either party interested, in case litigation should ensue, as such settlement he will accept $5500.00."

Appellee testified that the accident happened January 29, that he was in the hospital approximately two months, that when he returned assured informed him that one of the company's adjusters had made inquiry of her as to the amount of appellee's expenses, and that he (appellee) entertained the idea that the company would make a settlement. This, we think, probably accounts for assured's writing the letter containing appellee's offer of compromise.

This letter discloses the fact that appellee had been a member of the San Francisco bar for many years, and was for six years a superior judge. It is not likely that he was ignorant of his legal rights.

In our opinion, the evidence fails to establish that assured aided and abetted appellee in his endeavor to recover damages, especially in view of Mrs. Mallett's positive testimony to the effect that *"I answered everything the adjuster asked me and cooperated as much as I could."* This testimony of appellant's own witness was uncontradicted unless we accept appellant's contention that her acts belied her words.

In cases of this character, the judgment of the trial court, a jury having been

waived, has the force and effect of the verdict of a jury, and the judgment will not be reversed where there is substantial evidence upon which to base it.

We have carefully read the entire record and are of the opinion that the judgment should be affirmed. It is so ordered.