[L. A. No. 11259. In Bank.—August 15, 1929.]

REXFORD D. CRANDALL, Appellant, v. MABEL SCHNOUSER, Respondent.

774

Walter E. Barry and Clarke & Bowker for Appellant.

C. M. Booth for Respondent.

WASTE, C. J.—Plaintiff brought an action to establish a partnership between himself and the defendant relating back to the month of February, 1918. He prayed for an accounting and for a division of properties. The defendant denied the existence of any partnership, and alleged that all the property involved in the action belonged to her in "her sole and separate right." According to the averments of her amended answer, she and the plaintiff were married in Mexico in June, 1914, after which time they resided and cohabited together as husband and wife. During that period she alleged they purchased and acquired the real and personal property mentioned in the complaint, the consideration therefor having been paid from and out of their joint earnings. She then alleged that on or about the tenth of May, 1927, marital differences arose between herself and the plaintiff, and a dispute ensued as to the right of the plaintiff to expend the income from the real property involved for his own personal recreation and amusement; whereupon, desiring to cease to live and cohabit with the defendant, and intending to live separate and apart from her, plaintiff, in full settlement of their differences and disputes, and for the purpose of providing for the future support and maintenance of defendant, by certain instruments in writing assigned, transferred, conveyed and set over to the defendant all his right, title and interest in and to the joint bank accounts of the parties and in and to the personal and real property described in the complaint, all "as her [defendant's] sole and separate property."

By way of a further and separate defense to the action, the defendant alleged that "for some technical reason or law of the state of Baja California [where the marriage ceremony of the parties was performed], the nature of which is not known to this defendant," the marriage of the parties "is and was void," which fact was not known to the defendant, but was known to the plaintiff who fraudulently concealed the situation from the defendant in order that he would "not become or be bound by the said ceremony of marriage . . . while this defendant should and would at all times believe that by reason of the said ceremony she became and thereafter continued to be the lawful wife of the plaintiff, and would, by reason of such belief, cohabit with the plaintiff as his wife, and to the end that any property acquired by the said plaintiff and this defendant, by their joint earnings or the earnings of either of them, after the said ceremony of marriage, would not in fact be or become the community property of the plaintiff and this defendant, and so as to enable said plaintiff to desert and abandon and cease to cohabit with this defendant whenever plaintiff at his pleasure should so select, and without committing any breach of any legal marital obligation to this defendant." It was further alleged that, after the ceremony of marriage performed in Mexico, the parties returned to California, where the plaintiff had at all times lived and cohabited with defendant, and plaintiff, in furtherance of his said fraudulent intent, represented to defendant that she was his wife, and so stated and represented to numerous other persons in the community where plaintiff and defendant maintained their common home and abode. On the strength of this separate defense, defendant alleges that plaintiff "has been guilty of conduct in violation of the fundamental conception of equity, and does not come into court with clean hands."

Copies of the deeds and other documents, by which it was alleged the plaintiff transferred and conveyed the property in question to the defendant, were attached to and made a part of the amended answer. Plaintiff admitted the genuineness and due execution of these instruments by failing to file the affidavit denying the same which is required by section 448 of the Code of Civil Procedure.

The trial of the cause resulted in the nonsuit of plaintiff and judgment for the defendant, from which the plaintiff has appealed.

Appellant argues that this is not an action to set aside the conveyances executed and delivered by him to the respondent, but that he is acquiescing in the conveyances to the extent that he admits their genuineness and due execution. But he is, he contends, only seeking to have property which was put in the name of one partner subjected to the uses and purposes for which it was so transferred.

■ It is, of course, entirely consistent with the existence of a partnership that a transfer of property be made by one or more partners to another partner for partnership purposes. (*Haight* v. *Haight*, 151 Cal. 90 [90 Pac. 197].)

■ The main question, and the important one, to be first determined in this case is, therefore: Was a partnership established by the evidence in the court below? We do not think the evidence here, as a whole, has that effect.

The appellant testified, in his own behalf, that he and the defendant had lived together as husband and wife, and cohabited as such since June, 1914, and that at all times after that date and until, in 1927, he had held the defendant out to the public and to the world as his wife. In 1918, at which time plaintiff contemplated engaging in the grocery business with his father, he testified, he and the defendant "made an oral agreement as to [a] partnership," under the terms of which all property (other than that relating to the grocery business) accumulated by their joint efforts by work and buying and deals in property was to be partnership property, "to divide the money and the losses and her living and so on and so forth . . . everything we had or accumulated was to be divided on an equal basis." There was no partnership name or style under which the parties did business. No partnership books were kept, no partnership dividends were paid, and there was never any distribution of funds between the parties on a partnership basis. The appellant admitted that he never told anybody there was a partnership between himself and the defendant, and never mentioned copartnership in connection with the transaction until the complaint in this action was filed. "I could not," he testified, "because we [plaintiff and defendant] were living

as man and wife." Plaintiff did not repudiate or "de-
nounce" the existence of the marital relation between him-
self and the defendant until he filed the complaint in the
action in 1928. Before that time, on May 10, 1927, on
June 28, 1927, and on January 5, 1928, the appellant
executed the three instruments set out in the amended
answer of the respondent, in each of which he designated
the respondent *as his wife,* and in each of which there is
an apt recital that the property so transferred and con-
veyed is to be *the sole and separate property* of the re-
spondent.

 The appellant sought to testify as to his "inten-
tion" in executing and delivering the various documents to
the respondent; but the trial court properly sustained the
objection of the defendant to any such evidence. Plaintiff
was, however, permitted to testify to, and to submit other
evidence of the circumstances under which the instruments
were executed and delivered. The substance of such testi-
mony is that in 1927 the appellant and respondent "started
to have arguments" in regard to the handling of the prop-
erty, the respondent charging the appellant was improperly
spending money and not taking care of the property. It
also appears that appellant was in straitened financial cir-
cumstances, and banks and other creditors were demand-
ing security for their claims. The respondent refused to
join with the appellant in executing such security unless
the appellant "turned the property over to her to take
care of and put in her name." Appellant's testimony in
that regard is: "I was forced to make these deeds to
protect the property from foreclosure and loss. The banks
and creditors were demanding protection, and I was forced
to execute them to protect the property from foreclosure
and losing it. There were other reasons. The reasons
were to provide an income and give her [the respondent]
the property to manage, to collect the rents and look after
the property the same as I had before I turned it over to
her." The conveyances were executed, and respondent
thereupon executed the proper instruments to secure the
notes and evidences of indebtedness signed by the appel-
lant and delivered to his creditors. This evidence was
properly admitted. The failure to deny the genuine-
ness and due execution of the various instruments con-

veying the property to respondent by not filing the affidavit required by section 448, *supra,* did not estop the appellant on the trial, without further pleading, to introduce any legitimate defense he might have to the instruments, except the defense of want of genuineness and lack of due execution. (*Garcia* v. *California Truck Co.,* 183 Cal. 767 [192 Pac. 708].)

But we share the estimate of the trial court as to the evidence introduced by the plaintiff below. Even admitting, for the purpose of the decision, that a partnership between the parties was established, the evidence falls short of proving that the conveyances in question were executed as partnership transactions. An otherwise manifest intention of the parties clearly appears from the plain and unambiguous recitals of the various instruments executed by the appellant. He has not sought to reform the instruments, and they stand unchallenged as to their recitals and their effect. While it was not inconsistent with the theory of a partnership between the parties that the respondent should assume the obligations which she did in the transaction (*Haight* v. *Haight, supra*), by way of securing the various items of indebtedness of the appellant, we are of the view that the evidence does not establish that the transfer of the property was for partnership purposes.

While, upon a motion for a nonsuit the evidence and every inference that may be fairly deducible from it must be received in the light most favorable to the plaintiff's claim, it cannot be said in this case that there is an inference "reasonably and fairly deducible therefrom" that is "most favorable to the plaintiff."

The judgment is affirmed.

Curtis, J., Langdon, J., Shenk, J., Richards, J., Seawell, J., and Preston, J., concurred.