## CINEMA SCHOOLS, Inc., et al., v. WESTCHESTER FIRE INS. CO.

### No. 4170.

District Court, S. D. California, Central Division.

June 25, 1932.

surance in force on the insured property, other than that carried by defendant, aggregated $33,500. After giving effect to the coinsurance provisions of the policies, the liability which plaintiffs here assert against defendant is in the sum of $4,751.65, with interest thereon from the date of the loss.

Defendant denies, generally, that it is under any obligation to pay the loss. In addition to the defense thus pleaded, it sets up the following:

1. The actual cash value of the property insured was the sum of $80,000, and that inasmuch as plaintiff filed sworn proof of claim, setting out that such value was $39,753.72, there was intentional false swearing upon its part which invalidates the policy.

2. The policy provided that defendant "shall not be liable for loss or damage to any property insured hereunder while encumbered by a chattel mortgage."

3. That plaintiffs, on or about April 10, 1929, employed one H. M. Farrar to adjust its claim against the insurance companies having policies covering the destroyed and damaged property, and that Farrar assigned his claim for such compensation as he was to receive from plaintiff to one D. F. Morey, and that notice of their transactions came to defendant prior to the commencement of the instant suit.

In support of the second, separate defense, it is alleged that plaintiff, on or about October 10, 1928, executed and delivered to Marjorie E. Walters its promissory note in the sum of $15,000, payable eighteen months thereafter. On October 11, 1928, plaintiff secured the note by the execution and delivery of a chattel mortgage, covering a substantial portion of the insured property, to the said Walters. This mortgage, to the extent of $12,000, was in full force and effect upon the date of the fire. A copy of the mortgage was attached to the defendant's answer.

The case having come on for disposition, it was, under a stipulation of the parties, tried to the court without the intervention of a jury.

Several issues of fact were elaborated by voluminous testimony taken at the trial, and, at its conclusion, numerous law points were argued at length. Subsequently, they were briefed by counsel. In the main the questions of fact are subordinate to the law points. Of the latter, those having to do with the chattel mortgage are of prime importance. Defendant's second separate defense will, therefore, first be considered. In con-

Francis D. Adams, of Hollywood, Cal., Walter A. Ham, of Los Angeles, Cal., and Robert Clifton, of Hollywood, Cal., for plaintiffs.

Hindman & Davis, of Los Angeles, Cal., for defendant.

. KNOX, District Judge.

Defendant, in consideration of a premium duly received, issued its policy insuring plaintiff against loss or damage by fire, in an amount not exceeding $5,000, to certain personal property contained in the building wherein the corporate plaintiff conducted a school for the instruction of students in the art of motion picture acting. The policy was on the standard form of the state of California, and was to be in force from noon of July 16, 1928, to noon of July 16, 1929. Upon February 16, 1929, a fire occurred, destroying a large portion of the insured property, and damaging the remainder. The direct loss and damage claimed by plaintiff, and after taking account of salvage in the sum of $238.38, amounted to $36,607.50. In-

nection therewith, it may be said that plaintiffs, upon being apprised of the contents of defendant's answer, failed to file within ten days thereafter, or at any other time, an affidavit questioning the validity of the chattel mortgage. Due to such failure, defendant asserts that plaintiffs are now precluded from so doing. Upon this branch of the case, it is my conclusion that plaintiffs' failure to file an affidavit of the character suggested, amounted to an admission that the mortgage was genuine, and duly executed. California Code of Civil Procedure, § 448; Carpenter v. Shinners, 108 Cal. 361, 41 P. 473; Cordano v. Wright, 159 Cal. 610, 115 P. 227, Ann. Cas. 1912C, 1044. But infirmities in the mortgage touching the character of the lien secured thereby, and the effect to be given to the instrument, are not waived by failure to file the affidavit called for by the Code. Crandall v. Schnouser, 207 Cal. 772, 279 P. 778; Brooks v. Johnson, 122 Cal. 569, 55 P. 423. Hence, plaintiffs insist the mortgage must be held invalid in that the note secured thereby was lacking in consideration. In order that the merit, or the nonexistence thereof, of this contention may be made apparent, a statement of the circumstances under which the note and mortgage came to be executed and delivered, is required.

Certain controversies had arisen between Marjorie F. Walters and U. M. Dailey, president of the corporate plaintiff and perhaps, other parties. A basis of settlement having been reached an agreement to carry the same into effect was made between Mrs. Walter, Mr. Dailey, his wife, the plaintiff corporation, and another concern known as Dassell Productions. This contract bears date of October 10, 1928. One of its provisions was that the corporate plaintiff, acting through its attorneys, confess judgment in the sum of $15,000 in favor of Mrs. Walters, in a certain action then pending in the superior court of Los Angeles county. It was agreed, nevertheless, that the judgment should not actually be entered by the clerk so long as certain other provisions relating to the payment of said fifteen thousand dollars should be observed by the other parties to the contract. Meanwhile, the signed stipulation and judgment were to be held by Frank P. Doherty, in escrow. The contract went on to specify that the sum of $15,000 should be paid to Mrs. Walters, who also was known as Mrs. Sellers, by the parties named in the contract, other than the plaintiff, on or before eighteen months from October 10, 1928, and in eighteen equal monthly installments, beginning on November 10, 1928. Should there be default in this arrangement, the said Doherty, at the request of Mrs. Walters, was to enter the confessed judgment in the office of the county clerk of Los Angeles county, and take such other steps as might be appropriate to an enforcement of the same. Mrs. Walters having obtained attachments upon property of some of the parties to the contract of settlement, it was stipulated that the garnishments should remain pending and undetermined, and should serve as security for the payment of the said indebtedness to Mrs. Walters. The agreement then provided that: "The Cinema Schools (the corporate plaintiff herein) shall also, as security to Mrs. Sellers, execute a certain chattel mortgage, securing a note for fifteen thousand dollars, it being understood that the said obligation of fifteen thousand dollars evidenced by said note is one and the same obligation as that evidenced by said judgment, and all monthly payments made on account of said judgment shall be credited on said note secured by said chattel mortgage. Upon the payment of the said fifteen thousand dollars, evidenced by said judgment, and the compliance with the other terms of this agreement, the said actions brought by Mrs. Sellers against other parties of this contract shall be dismissed with prejudice, and the said chattel mortgage released and satisfied, and the said judgment of fifteen thousand dollars shall likewise be satisfied of record by Mrs. Sellers. * * *".

Other provisions of the contract not immediately germane to the question now before the court are omitted.

█ The foregoing recital, in my judgment, is sufficient to dispose of plaintiff's contention that the note secured by the chattel mortgage was given without consideration. It has long been settled that an antecedent debt may constitute a good consideration for a note. Emery v. Lowe, 140 Cal. 379, 73 P. 981; 8 C. J. 215. Furthermore, section 25 of the Negotiable Instruments Law, in effect in California on July 31, 1917 (St. 1917, p. 1537), expressly provides that: "An antecedent or pre-existing debt constitutes value; and is deemed such whether the instrument is payable on demand or at a future time." (Civ. Code Cal. § 3106.)

██ The circumstance that the debt in this case, if antecedent in character, has been reduced to judgment, does not lessen the sufficiency of the debt as a consideration. Nor is the fact that the note was not given in return for a satisfaction of the judgment or debt fatal to its validity, since a pre-existing

debt constitutes value even though the note has been given merely as collateral security for the debt. See People's State Bank v. Penello, 59 Cal. App. 174, 210 P. 432.

But, aside from all this, the contract between the parties, and under which the note and chattel mortgage came into being, provided that, in consideration of the matters which moved to Mrs. Walters thereunder, she released "Mr. and Mrs. Dailey and the said corporations of all claims of any kind and character that she has against the said parties and corporations or either of them and accepts full and complete satisfaction of any and all of said claims, excepting the matters hereinafter set forth. * * *" Also, it was the agreement of Mrs. Sellers that the confessed "judgment shall not be filed or entered by the Clerk of the above entitled court so long as the other parties to this contract comply with the terms herein set forth relative to the payment of said Fifteen thousand ($15,000.) Dollars." These provisions amounted to nothing less than an extension of time within which to discharge the debt and they constituted a forbearance of legal rights on the part of the mortgagee and were a good and sufficient consideration for the note.

In Koeberle v. Coit, 46 Cal. App. 641, 643, 189 P. 727, it was held that a note and chattel mortgage given to avoid the levy of execution on property and to avoid its attendant annoyance and humiliation were valid and enforceable. Here, of course, there could be no levy of execution unless the judgment were first entered, and the mortgagee had agreed these steps would not be taken so long as plaintiff paid the installments on the note. Meantime, she enjoyed the protection afforded by her note and mortgage, and was assured that other creditors of the plaintiff could not impair the ultimate collection of her debt.

Holding as I do that the note secured by the mortgage is a valid instrument, there is no reason to find the contrary with respect to the mortgage.

Provisions of a fire insurance policy such as that now before me are valid and enforceable, and may constitute a complete defense against liability on the part of the insurer. Sun Insurance Office v. Scott, 284 U. S. 177, 52 S. Ct. 72, 76 L. Ed. 229; Hunt v. Springfield F. & M. Ins. Co., 196 U. S. 47, 25 S. Ct. 179, 49 L. Ed. 381. Indeed, a chattel mortgage, valid as between the parties thereto, although fraudulent and void as to creditors, is an incumbrance which may raise a good defense to an action brought on a fire insurance policy such as the instant suit. Hartford Fire Ins. Co. v. Jones, 31 Ariz. 8, 250 P. 248; Home Ins. Co. v. Scott (C. C. A.) 46 F.(2d) 10.

The case of Raulet v. Northwestern Nat. Ins. Co., 157 Cal. 213, 107 P. 292, cited by plaintiff, does not require a conclusion different from that so far indicated. The court there held that the instrument under consideration, although a chattel mortgage in form, was not such as a matter of fact. For this reason, it was not within the prohibitory provision of the insurance policy on which suit was brought. The instrument in that case purported to secure the payment of rent to accrue in the future, and it did not relate to an existing indebtedness. Also, since the furniture not covered by the alleged mortgage was equal in value to twice the sum demanded in the suit, the existence of the instrument was said not to have increased the risk of the insurer. In Coniglio v. Conn. Fire Ins. Co., 180 Cal. 596, 182 P. 275, 5 A. L. R. 805, also cited by plaintiff, all the court held was that a policy covering an entire stock of merchandise and fixtures was not vitiated because plaintiff still owed $50 for one item, not specifically named in the policy, and which he was purchasing on a conditional sales contract. It is also to be noted that there plaintiff waived all claim of loss to such item.

Neither of these cases, nor any other which plaintiff has called to my attention, will avoid my conclusion that the prohibitory clause against chattel mortgages in the policy on which suit is brought, takes the property covered by the Walters mortgage from within the protection of the policy. It will not, however, completely vitiate the policy. This is due to the fact that the chattel mortgage clause of the policy expressly states that "the liability of the company upon other property hereby insured shall not be affected by such a chattel mortgage."

Since in this case the chattel mortgage placed upon some of the insured property was not executed or filed until after the effective date of the insurance policy, nothing need here be said as to the knowledge of the existence of the mortgage on the part of the insurer, nor of its failure to inquire with respect to mortgages at the time the insurance policy was written. Plaintiff does, however, raise the point that defendant, by permitting plaintiffs to salvage some of the property, to spend money therefor, to furnish appraisals, etc., have waived the provision

of the policy relating to chattel mortgages. I am unable to countenance the applicability of the argument to the present situation. As already pointed out, the policy was and is effective as to unmortgaged property. As to that, certainly, defendant was justified in insisting upon the steps that were taken concerning proofs of loss and matters incidental thereto. The mortgaged, as well as the unmortgaged, property was destroyed and damaged, and it had to be segregated and released from the confusion of the fire. Defendant, furthermore, had good reason to believe that claim would be made against it for loss and damage to all the property—that belief has resolved itself into certainty—and for the purposes of settlement, or otherwise, defendant was entitled to be apprised of the extent and nature of the liability that would be asserted against it. I shall, accordingly, decide that there was no waiver by the issuance of the chattel mortgage clause in the policy. See People's Bank of Greenville v. Aetna Ins. Co. (C. C. A.) 74 F. 507; Bakhaus v. Germania Fire Ins. Co. (C. C. A.) 176 F. 879; Miller v. Union Assur. Soc. (C. C. A.) 39 F. (2d) 25.

Then, too, the policy declared that the demand by the company for an appraisal should not constitute a waiver of any other condition of the contract of insurance.

■ Upon the trial defendant sought to obtain a ruling that this suit is improperly here, in that plaintiff failed and neglected to carry out an agreement of appraisal of the loss entered into between it and the insured. With reference to this feature of the suit, it is my opinion that the insured is in no wise barred from maintaining this action. A clause contained in the policy is as follows: "If for any reason not attributable to the insured, or to the appraiser appointed by him, an appraisement is not had and completed within ninety days after said preliminary proof of loss is received by this company, the insured is not to be prejudiced by the failure to make an appraisement, and may prove the amount of his loss in an action brought without such appraisement."

As I recall the evidence touching upon this subject-matter, it was that the appraisers chosen by defendant to arbitrate the loss unreasonably delayed the completion of their preliminary work. They were anything but diligent, and the impatience with which the agents of the insured awaited an appointment for a discussion of the loss was entirely justified. The delay that ensued warranted the institution of suit, and I am without sympathy for defendant's argument that plaintiff's complaint is insufficient for the purpose of showing that the failure of the appraisement was due to the fault of the insurer. Such contention is overruled.

Adverting to the third separate item of defense advanced by defendant, it suffices to say that it presents nothing of merit, and is overruled. This, likewise, will be the disposition given defendant's first, separate defense. The proof wholly fails to support the averments there set forth.

Having determined the foregoing matters, a word needs to be said with reference to two items of alleged loss of unmortgaged property which were the objects of much testimony and discussion at the trial. Particularly, these items relate to the value to be placed upon seven pairs of double-faced window hangings 16 feet high, equipped with appropriate tie backs, being set No. 4 of stage No. 1, and upon several hundred rather elaborate cinema school catalogues.

The window hangings were variously appraised by defendant's and plaintiffs' witnesses respectively, at sums ranging from $220.50 to $2,100. Much was said as to the quality of the material, age, deterioration, and numerous other considerations. In addition, several photographs, showing the general appearance of the draperies, were put into evidence. No special purpose will be served by setting forth the gist of the testimony adduced. It is impossible of reconciliation. The most that serviceably can be done is that I state my estimate of the value of these curtains and their tie backs. From a careful consideration of all the evidence touching their age, quality, deterioration, etc., my judgment is that they were of the value of $875, and such will be my finding.

■ As for the catalogues, it may be said that these were handsomely printed prospectuses of the school, containing a number of illustrations made from photographs specially taken therefor. The plates for the illustrations, as well as the catalogues, were destroyed by the fire. As a matter of original preparation and printing, these articles undoubtedly represented a substantial expenditure. They were prepared several years before the fire, and related solely to the matter of instruction in acting in silent motion pictures, and were unadapted for showing prospective students of plaintiffs' institution that they might there obtain instruction for participation in the production of sound pictures, which latter class of work was being carried on at the time of the fire. Notwith-

standing, Mr. Dailey testified that the catalogues were being currently used, and that it was his intention to send them to prospective students. Mr. Farrar, one of plaintiff's witnesses, valued the catalogues at $1,500. None of the prospectuses were seen by defendant's appraisers at the scene of the fire, but after being informed of the nature and quality of the articles, and their antiquity, these witnesses thought the books had no insurable value. Aside from the question of fact that thus is presented, defendant argues that the catalogues were not within the coverage of the fire policy even though they be assumed to have been of value. In support of the argument, citation is made of the case of American Fire Ins. Co. v. Bell, 33 Tex. Civ. App. 11, 75 S. W. 319, 321, wherein it was held that books of reference upon the practice of dentistry could not be "classed as furniture, chairs, gas apparatus, vulcanizers, electric motors, screens, pictures, paintings, 'instruments, appliances and material incidental to a dental office.'" The decision so made, I should say, was correct, but it cannot rule the point here made. The coverage in this case includes "furniture and furnishings of every description, and on equipment and supplies incidental to the occupancy" of the premises for a school. As a matter of common knowledge, catalogues are a necessary and usual appurtenance to the successful maintenance of a school which, in return for a consideration, gives instruction to students in particular branches of learning or activities. They are rightfully to be included within the classification of "equipment and supplies" and their destruction makes them an item of loss under the policy. I cannot, however, give them a value of $1,500. One-third of that amount will be entirely ample.

Plaintiffs claim a total loss on property not covered by the chattel mortgage, less salvage of $8,270.73. Considering the figures which I place on the drapes of set No. 4 of stage No. 1 and upon the catalogues and plates, plaintiffs' alleged loss, aside from possible overvaluation on other items, must give way to the extent of $2,225.

But this is not all. It is my belief that other losses claimed by plaintiffs are from 15 to 20 per cent. too high. For such reason, I shall reduce the same by 15 per cent. The result is that the amount of plaintiffs' loss on the unincumbered property will be fixed at $5,345.12.

With the decision of the matters hereinbefore contained and with the figures as to salvage costs and other participating factors, which seem not to be in dispute between the parties, I believe they are in position to work out the sum for which plaintiffs are entitled to judgment. If they do this and will incorporate the same in an appropriate order, I shall sign and enter the same.