[Sac. No. 6307.   In Bank.   Jan. 13, 1953.]

KESTERSON LUMBER CORPORATION (a Corporation), Appellant, v. FRIESLEBEN ESTATE COMPANY (a Corporation), Respondent.

Rogers & Clark, Webster V. Clark, Raymond A. Leonard, Ware & Ware and A. B. Ware for Appellant.

Rich, Weis, Carlin & Fuidge, W. P. Rich, Winston Churchill Black, Clewe, Martin & Blade, Ernest Clewe, Manwell & Manwell and Ray Manwell for Respondent.

SHENK, J.—This is an appeal by the plaintiff, Kesterson Lumber Corporation, from a judgment for the defendant on its cross-complaint. The plaintiff sued on, and the defendant cross-complained under, a contract for the purchase and sale of real and personal property owned by the defendant. The controversy grew out of the following circumstances.

The plaintiff owns and operates several ranches. The defendant, also a corporation, owned a single asset, a ranch of 1,700 acres in Butte County which was devoted to the raising of livestock and agricultural crops. Ella M. Friesleben, an elderly woman, owned five-sevenths of the corporate stock and was president of the company. She depended on the operation of that ranch as her source of income.

The Friesleben ranch had been operating at a loss and was encumbered to the extent of $80,000 under a deed of trust and a chattel and crop mortgage. A sale was deemed the solution. Prior to May 23, 1944, Arnold Christensen made an offer to purchase for a total price of $215,000— $150,000 for the land, $21,000 for the livestock and equipment, and $44,000 for the current crops. On that day agents acting for Christensen and Friesleben signed a ''deposit receipt'' calling for a deposit of $5,000, payment of $20,000 on acceptance by Friesleben, $25,000 on August 1, $25,000 on November 1 and the balance of $140,000 on January 14, 1945, with interest to commence from August 1, 1944. Kesterson also wanted to purchase the ranch for a total of $225,000 for the real and personal property. Advisers informed Mrs. Friesleben that there was no existing agreement with Christensen and that she was free to accept the Kesterson offer which provided for a $50,000 deposit. On the assumption that there was no agreement with Christensen, the Friesleben Estate Company on May 29, 1944, executed and delivered to the Kesterson corporation a deposit receipt agreement. Thereunder the latter was given 45 days for examination of title, and if it proved defective a further 90 days after notice within which to exercise an option to accept title in its defective condition or recall the deposit.

Shortly thereafter Christensen claimed that there had been an acceptance of his offer and that a contract of sale to him was in existence. On June 17, 1944, he commenced an action for specific performance against the Friesleben Estate Company. The parties here believed that the Christensen claim could be defeated and on July 24, 1944, they executed a new

contract dated June 16, 1944, which is involved in the present action and cross-action.

By the agreement dated June 16th the previous contract of May 29th was kept in force except as modified in the following particulars: The agreement recited the title defect, that Christensen had commenced the action for specific performance, and that title could not be perfected within the time specified in the May 29th contract. The Friesleben company agreed to defend the Christensen action and to save the Kesterson corporation harmless from any claims or demands that might be made by Christensen. The Friesleben company agreed to deliver to the Kesterson corporation a bill of sale covering the personal property, and the Kesterson corporation agreed "contemporaneously" to make a $50,000 part payment on the sale price of $225,000, which was to be applied in reduction of the lien indebtedness and for release of the crop and chattel mortgage. The Kesterson corporation was to have immediate possession of the real and personal property with the "same force and effect as though said agreement dated May 29, 1944, had been consummated," and to be entitled to the exclusive use and benefit of the property, and the rents, issues and profits thereof free of charge, "as though all of said property had been actually conveyed to the Purchaser free and clear of all liens and encumbrances whatsoever, except current taxes not delinquent." It was agreed that if Christensen won in the litigation against the Friesleben company, the latter should cause the Christensen purchase fund to be deposited in escrow and to authorize therefrom payment to the Kesterson corporation of all sums owed including "reimbursement for said sum of $50,000," plus any sums not exceeding $10,000 expended for capital improvements, and any sums expended in settlement of any claims or demands by Christensen as to which the indemnification applied, balance to be paid to the Friesleben company. If within 18 months from June 16th, 1944, the Christensen action should not be finally determined, the Friesleben company agreed "on demand to repay" the $50,000 and the other expenditures unless that period was extended. The Friesleben company was permitted to increase the realty encumbrance to the extent of $10,000 for corporate uses. Pending the outcome of the Christensen action the Kesterson corporation was not to resell any ranch equipment but could "resell all livestock and crops located thereon, as Purchaser's own property, without any liability to account to Seller for any proceeds of

such resale." As the contract and the record discloses, "personalty" referred to and included both harvested and planted crops, the livestock, and the farm equipment.

The Kesterson corporation took immediate possession of the ranch, received a bill of sale of the personalty, and made the $50,000 initial payment to the Friesleben company.

In July 1945, a decree for specific performance was granted to Christensen in his action against the Friesleben company. By that judgment $65,000 was allowed to Christensen as a set-off against the total purchase price of $215,000 for undelivered crops, livestock and equipment. The sum of $25,000 additional was allowed for the rental value which subsequently was reduced by $23,000 when in 1946 the parties in that action agreed to dismiss the appeal taken by the Friesleben company.

In the meantime the harvesting of the 1944 crops on the Friesleben ranch was completed by the plaintiff. Crops for the 1945 season were planted and harvested. No crops were planted in 1945 for the 1946 harvest. All of the crops, all of the livestock and poultry, and part of the farm equipment were sold by the plaintiff. It also removed a portion of the equipment. On December 17, 1945, it surrendered possession of the real property and demanded the return of the $50,000 payment without offering any further restoration.

On December 26, 1945, the plaintiff filed the complaint in the present action for repayment of the $50,000 with interest from December 17, 1945, alleging full performance of the obligations and terms of the contract to be performed by it. The defendant denied the indebtedness and performance by the plaintiff; and by way of affirmative defenses and cross-complaint invoked the equitable principle that the plaintiff was not entitled to restitution of the $50,000 without the restoration of the benefits received.

The plaintiff placed in issue the allegations of the cross-complaint. It contended that the contract was complete and unambiguous and expressed the true intent of the parties that on failure of the defense in the Christensen action and termination of the contract, the plaintiff was entitled to the return of the $50,000 initial payment without an accounting or the restoration of any of the personal property, title to which was transferred under the bill of sale; that the contract of June 16th became one for the sale of the real property only, for a total price of $225,000; and that the use of the realty and the transfer of the personalty under the bill of

sale, without obligation for an accounting, were received as consideration for the extension of time, the use of the $50,000 in reduction of the indebtedness to clear the title to the personalty, and the permission to the defendant to borrow an additional $10,000 under the deed of trust.

The trial court rejected the plaintiff's contentions. It found and determined that the contract included both the real and the personal property. It concluded that the contract was ambiguous because it did not clearly express the plaintiff's obligation in the event Christensen won his suit or the contract was sooner terminated by the plaintiff, even omitting a requirement to redeliver possession of the realty; that the contract expressly provided the remedy of restitution by the defendant, and that the language as interpreted by the surrounding circumstances implied the corresponding obligation of restoration on the part of the plaintiff. The court took evidence to determine benefits received by the plaintiff from its operation of the ranch. It further found a net operational excess over expenses of $52,327.12 and the reasonable value of sold and removed equipment as $3,500, or a total obligation of $55,827.12 which, with the credit of the $50,000 initial payment received by the defendant, left a net sum due from the plaintiff to the defendant of $5,827.12. Judgment was entered accordingly with interest from December 17, 1945.

The principal burden of the appeal is that the trial court gave no effect to the parties' agreement that in the operation of the ranch the plaintiff was to have free use and occupancy of the property and was not obligated to account for sales of crops and livestock. The plaintiff contends that giving meaning to the express provisions of the contract entitles it to a reversal of the judgment and entry of judgment in its favor on the complaint.

■ The court correctly proceeded to interpret the contract based on a construction of the language in the light of the surrounding circumstances. (Code Civ. Proc., § 1860; Civ. Code, § 1647; *Fraters G. & P. Co.* v. *Southwestern C. Co.*, 200 Cal. 688, 695 [254 P. 1097]; *Crandall* v. *Schnouser*, 207 Cal. 772, 777 [279 P. 778]; *Universal Sales Corp.* v. *California Press Mfg. Co.*, 20 Cal.2d 751, 761 [128 P.2d 665].)

The court correctly rejected other offered theories in arriving at a conclusion that the contract gave to the plaintiff the right to terminate the contract when it did, and in the event of such termination that the parties agreed on restitution of the $50,000 received by the defendant. But the

contract language also has meaning to discover what the parties, in the light of all the circumstances, intended should be restored by the plaintiff when it exercised the right to terminate. The contract expresses the defendant's obligation of restitution. But ambiguity appears in the respects in which the parties failed to deal fully with the plaintiff's duty of restoration.

It is clear from the contract that the parties contemplated alternative eventualities, namely: that the title would be cleared of the Christensen claim and that the sale to the plaintiff would be completed; or that the defendant would not prevail in the Christensen action, and that the defendant would be required to deliver the property to him. Pending final determination of the Christensen action, or in the event of termination of the contract by the plaintiff at the expiration of the 18-month period, the plaintiff was to take possession of the real property, and title and possession of the personal property, in order to be able to operate the ranch without interference due to the Christensen claim. To this end title to the personalty was cleared by the use of the $50,000 initial payment to reduce the indebtedness and obtain a release of the chattel and crop mortgage, and enable the defendant to deliver a clear title bill of sale to the plaintiff. The latter had declined to operate the ranch if on termination without sale it should be required to account for the farming operations. Substituted for such a provision was the permission to sell crops and livestock without accounting, restricting sales of equipment, and giving possession rent free. These provisions would be unnecessary in the event the sale to the plaintiff should be completed. They had bearing only on the plaintiff's obligation of restoration in the event of termination of the contract.

But it does not follow that in the event of the termination which occurred the plaintiff was absolved from all obligation except to restore possession of the realty. As stated the parties also contemplated the eventuality of losing the defense in the Christensen action and the consequent necessity of delivering the property under the Christensen agreement. They were fully aware that Christensen was buying a ranch equipped and in operation with planted crops. The defendant was willing to risk some loss by inability to deliver the current crops and rental value for the time Christensen was out of possession. The plaintiff risked the interim operation of the ranch at a loss. But unquestionably, as the court's con-

clusions imply, the language of the contract and the surrounding circumstances manifest the intention of the parties to keep the property as an equipped and going ranch in the event it must be delivered to Christensen. It thereby becomes clear that the parties did not intend restoration of possession of the realty without more. No such express provision appears and the contract language and the circumstances readily suggest that if the plaintiff had asked express release from all obligation except the redelivery of the possession of the realty as the condition for the restitution of the $50,000 payment under the contract, the request would have been rejected. (*Cf. Foley* v. *Euless,* 214 Cal. 506, 511-512 [6 P.2d 956]; *Tanner* v. *Title Ins. & Trust Co.,* 20 Cal.2d 814, 824 [129 P.2d 383]; *Stockton Dry Goods Co.* v. *Girsh,* 36 Cal.2d 677, 681 [227 P.2d 1, 22 A.L.R.2d 1460].) On the other hand, as the cited cases also indicate, the provisions which were included and which bear on the plaintiff's obligations in the event of termination must be given meaning and application.

The court properly determined that the contract is not divisible—one portion relating only to the realty and the other to the personal property—as urged by the plaintiff. It is a single contract for the purchase and sale of the ranch as a going concern, covering both real and personal property. Nor is it a plain and unambiguous contract to that end alone. By its terms it contemplates the contingency that Christensen may prevail in his claim to the property, but it fails to provide what the plaintiff might be required to do in the event that restoration be required on its part. Its provisions are plain to the effect that upon failure of the defendant to convey the plaintiff should be entitled to the restitution of the initial payment, but it fails to provide for surrender of possession of realty or restoration otherwise on the part of the plaintiff. Apparently it is the position of the plaintiff that under the contract it could take immediate possession of the ranch, sell the personal property, except the farming equipment, as its own, retain the proceeds, farm the land at a net profit in excess of the initial payment and surrender possession of the naked realty, stripped of crops, either planted, growing or harvested, and still be entitled to the retention of the original payment. Such a construction would be entirely unreasonable.

The trial court correctly declared the contract to be ambiguous and proceeded to take evidence as to the circumstances surrounding the parties at the time of its execution

and the conduct of the parties under it. After an extended trial on that issue the court rightly concluded that the obligation of restitution by the defendant of the initial payment was plain and that the plaintiff had the right to terminate the contract when it did. And it also properly concluded that the plaintiff was under obligation to restore to the defendant the benefits received as a condition to such restitution. The court applied the principle akin to the doctrine of rescission to the effect that a party affirmatively seeking restitution, is under the correlative obligation to restore benefits received in order that the status quo *ante,* so far as is practicable, may be established. This rule is recognized and approved in the Restatement of the Law of Contracts, volume 3, section 349, page 595, section 354, page 610. Its salutary purpose is reflected in section 1691 of the Civil Code (see, also, Williston on Contracts, Rev.Ed. § 1460A, p. 4082 et seq.; *Alder* v. *Drudis,* 30 Cal.2d 372 [182 P.2d 195]).

The court then proceeded to ascertain the amount of the benefits received. The evidence shows and the court found as above indicated that the plaintiff received benefits in an amount in excess of the initial payment made by it and to the extent of the amount ordered paid. The record supports the findings and conclusions.

The judgment is affirmed.

Gibson, C. J., Edmonds, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.

Appellant's petition for a rehearing was denied February 10, 1953.