of purchasing them for the purpose of making the note in suit. But the admitted fact is that the defendants were deeply interested in the sale of the bonds, upon which they stated they were to receive commissions, and that they agreed to pay the note out of the proceeds realized from the sale of the bonds. We have thus the case of a valid contract the obligations of which the defendants seek to overthrow by oral testimony in contradiction of the terms of the note. This cannot be done.

[2] I cannot agree with the further contention that the plaintiff in no event may maintain this action upon the note of May 8th because of its failure to surrender the prior original note of March 8th. The plaintiff tendered the defendants the note of March 8th in open court upon the trial, and, while a creditor may doubtless sue upon the original demand and bring the extension note into court to be given up on the trial (Jagger Iron Co. v. Walker, 76 N. Y. 521, 524), I do not understand the rule to be that the holder of a renewal note is precluded from suing thereon because of his failure to surrender the original note, where, as here, he brings the original note into court and offers to give it up and where no rights of third parties·are involved. In Gansevoort Bank v. Gilday, 53 Misc.·Rep. 107, 104 N. Y. Supp. 271, cited by defendants, it does not appear that the plaintiff surrendered or offered to surrender the prior notes. In my judgment the verdict was properly directed against the defendants.

Motion to set aside verdict denied.

---

### SLOCUM v. SARATOGA & WASHINGTON FIRE INS. CO. OF SARATOGA AND WASHINGTON COUNTIES.

(Supreme Court, Appellate Division, Second Department. March 15, 1912.)

1. INSURANCE (§ 612*)—FIRE POLICIES—STATEMENTS CONCERNING LOSS—TIME FOR FILING.

Under a fire policy which requires insured to give immediate notice of any loss and to render a statement to insurer within 60 days after the fire, compliance with such requirements is a condition precedent to right to recover on the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1520–1528; Dec. Dig. § 612.*]

2. INSURANCE (§ 539*)—FIRE POLICIES—RENDITION OF STATEMENT—"WITHIN 60 DAYS AFTER THE FIRE."

A fire policy, which requires insured within 60 days after a fire to render a statement to insurer, requires submission of the statement within 60 days after the fire has terminated or abated to such an extent that an inspection of the property damaged may be made.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1328–1336; Dec. Dig. § 539.*]

3. INSURANCE (§ 665*)—FIRE POLICIES—STATEMENT CONCERNING LOSS—TIME. FOR SUBMISSION—EVIDENCE—WEIGHT.

In an action on a fire policy, evidence *held* to show that statement concerning loss was not rendered within 60 days after the ·fire had so

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

far abated that a statement might have been prepared as required by the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1555, 1707—1728; Dec. Dig. § 665.*]

4. INSURANCE (§ 551*)—FIRE POLICIES—PROOFS OF LOSS—DEFECTS—RIGHT TO· AMEND.

    Omission of a statement of venue in proofs of loss under a fire policy is amendable in furtherance of justice.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1357; Dec. Dig. § 551.*]

Hirschberg, J., dissenting.

Appeal from Trial Term, Dutchess County.

Action by Egbert D. Slocum against the Saratoga & Washington Fire Insurance Company of Saratoga and Washington Counties. From a judgment for plaintiff and from an .order denying a new trial, defendant appeals. Reversed, and new trial granted.

Argued before JENKS, P. J., and HIRSCHBERG, WOODWARD, BURR, and RICH, JJ.

William Rooney, for appellant.

James E. Carroll, for respondent.

JENKS, P. J.  [1-3]  The action is brought upon a fire insurance policy of the standard form, the plaintiff gained a verdict at trial term, and the defendant appeals. One of the defenses pleaded is that the plaintiff did not comply with a provision of the policy:

"If fire occur the insured shall give immediate notice of any loss thereby in. writing to this company, and, within sixty days after the fire, unless such time is extended in writing by this company, shall render a statement to this· company, signed and sworn to by this insured, stating the knowledge and belief of the insured as to the time and origin of the fire," etc.

A compliance herewith was a condition precedent to the maintenance of the action. Peabody v. Satterlee, 166 N. Y. 174, 59 N. E. 818, 52 L. R. A. 956. I think that the evidence did not justify the jury in finding such compliance, and that therefore there should be a new trial. "Within sixty days after the fire" means "within sixty days after the fire has terminated or abated to such an extent that an· inspection of the property damaged may be had." National Wall Paper Co. v. A. M. M. Fire Ins. Co., 175 N. Y. 226, 67 N. E. 440. Explanatory of this interpretation, the court say, per Haight, J.:

"Until the fire abates, or is ended, his" (i. e., the insured) "access to the· premises may be impossible, and in consequence he may be unable to learn· the precise extent of his loss."

The policy termed the "Farm Policy Form" insured in divers sums. a two-story shingle frame roof building, while occupied as a dwelling house, three barns, and certain farm produce, feed, and cattle, all situate on a farm in the town of Dover. The loss as reported by the· plaintiff consisted of 400 bushels of oats, 17 tons of hay, 2 tons of dry straw feed, and granary, hen and hog house, dwelling and barn,. all totally destroyed, and barn No. 1 slightly damaged. The struc-

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes.

tures were of frame, save there were metal or tin roofs upon them or some of them, and were situate in comparatively open country. I shall consider first the evidence as to what time after the fire the insured could have determined by inspection the precise extent of his loss.

The plaintiff testifies on direct examination that the fire began about 7 p. m. on Friday, July 15, 1910, and that "we had a fire there burning four or five days after the original fire." Upon cross-examination he testifies that when the fire broke out he was a mile away, but went to the scene in a motor car; that when he reached there about half the building was burned; that he stayed there all night; that he could not tell how long it was after he went there that the roof fell in; that he helped protect barn No. 1; that there was no water put on the building or the lean-tos, so far as he knew; that by midnight the building was all down, it had fallen, "the whole thing had gone down in a bunch of flames, a bunch of fire, right into the cellar"; and that he went home about 6 or 7 a. m. of the next day. He was then asked:

"Q. You knew at that time, did you not, that the house was a total loss? A. At the time I left, sure. Q. You could see that from looking at it? A. Oh, yes, yes."

He further testifies that the hay and grain were on fire the evening of the 15th, that he saw them burning there, and that he could not make any attempt to put it out—he could not get to it.

"Q. You knew on the 16th that the hay would be a total loss; you did not expect to save it at all, the day after the fire? A. No, sir. Q. You knew that was a total loss? A. Yes, sir. Q. You could see that? A. Yes, sir. Q. Also the oats? A. The biggest part of them. Of course, as I told you, we culled out a few bags, I think a week or two after. * * * Q. So that on the 16th day of July, 1910, you knew that you had suffered a total loss, did you not? A. I did; yes, sir."

The plaintiff's witness Hasbrouck on the direct examination testifies: That the fire began on the evening of July 15, 1910. That he did not recall whether the building and contents were burning subsequent to that date. That on the next Sunday a large piece of oats was beginning to "go up," as there was a little wind coming up. That it was coming up in a blaze. That it was burning about a week before they got it "all cleaned up" and the fire put out entirely. It was chiefly the oats, and the planking under the floor. There was refuse that was burning in there that could not be reached, and "they got the whole thing torn up." He put his hose on it Sunday. The fire broke out again during the following week. The fire was not put out until the latter part of the next week. On cross-examination he testifies that the roof fell in about one hour or an hour and a half after the fire began. He was asked:

"Q. It was apparent, was it not, that the building was totally destroyed on the morning of the 16th of July, you could see that? A. Well, no, you mean the timbers and everything burned up? Q. No, the building had lost its semblance as a residence? A. Sure. Q. All that was left was some blackened timbers in the basement? A. It was burning yet. Q. Just smouldering and smoking? A. The heavy timbers and those things had not all burned up. Q. They had not all burned up? A. Oh, no. Q. They did not burn up afterwards? A. Yes, they all burned up finally."

I think I have noticed all of the testimony bearing upon this issue, save that it is to be noted that the plaintiff testifies that the hay, oats, and rye straw burned were in barn No. 2 (of which the contents were not insured), and that if this was the fact he was not entitled to recover therefor in any event. The learned counsel for the respondent insists that this testimony was a manifest error on the part of the plaintiff, but I am not convinced as against the record as it reads.

I think, then, that the great preponderance of the evidence indicates that the plaintiff could have determined by inspection on the 16th day of July the extent of his loss. It indicates that the plaintiff could have seen that the buildings had lost their character as buildings, that they could not be thus designated, so that there was a total loss thereof within the rule of Corbett v. Spring Garden Ins. Co., 155 N. Y. 389, 50 N. E. 282, 41 L. R. A. 318, and that the personal property covered by the policy had been, or at least would be, totally destroyed. National Wall Paper Co. v. A. M. M. Fire Ins. Co., supra, 175 N. Y. at page 228, 67 N. E. at page 440. The fact that "a few bags" of oats were culled out finally did not indicate that the plaintiff could not on the 16th of July have determined the character and extent of the loss in that respect, or suffice to change the character of a total to a partial loss. Singleton v. Boone County Home Mut. Ins. Co., 45 Mo. 250.

Proofs of loss were mailed in the city of Poughkeepsie on September 14, 1910, and received by the defendant on Thursday, September 15, 1910. If the condition of the conflagration was such that on July 16, 1910, the plaintiff could have learned the extent of his loss, then it follows that the plaintiff did not comply with the provisions, inasmuch as the proofs were not received within the prescribed period of 60 days. Peabody v. Satterlee, supra; Fink v. Fink, 171 N. Y. 616, 623, 64 N. E. 506.

[4] The proofs of loss were sworn to before a commissioner of deeds, Poughkeepsie, New York, but there was an absence of venue. The omission is amendable in furtherance of justice. Nichols' New York Practice, 508, and cases cited.

The judgment and order are reversed, and a new trial is granted costs to abide the event.

BURR, WOODWARD, and RICH, JJ., concur. HIRSCHBERG, J., dissents.