SUN INSURANCE OFFICE *v.* SCOTT.*

No. 28. Argued October 22, 1931.—Decided November 23, 1931.

---

* Together with No. 29, *Norwich Union Fire Insurance Society, Ltd.,* v. *Scott,* and No. 30, *Home Insurance Co.* v. *Scott.*

*Mr. Rolland M. Edmonds* for petitioners.

*Mr. F. S. Monnett,* with whom *Messrs. James Joyce* and *Elwood Murphy* were on the brief, for respondent.

MR. JUSTICE ROBERTS delivered the opinion of the Court.

The respondent instituted five actions in a common pleas court in Ohio on as many policies of fire insurance. The causes were removed to the District Court for Southern Ohio, where they were consolidated, tried together, and resulted in verdicts and judgments for respondent. On appeal two of these judgments were reversed, and the three here under review were affirmed.[1] We granted certiorari.

Each suit seeks recovery upon a fire policy issued upon wool belonging to respondent. In each, defense was made that he placed a chattel mortgage on the property in violation of a provision of the policy as follows:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void . . . if the interest of the insured be other than unconditional and sole ownership; or if the subject of insurance be . . . personal property and be or become incumbered by a chattel mortgage."

It is admitted that on June 19, 1926, the respondent executed a chattel mortgage on the insured property to a bank, and that the mortgage continued in force at the time of the fire. The policies of the Sun Insurance Office and the Norwich Union Fire Insurance Society, Ltd., were is-

---

[1] 46 F. (2d) 10.

sued on June 14, 1926. That of The Home Insurance Company of New York bore date July 6, 1926. Each of the policies had attached to it a " loss payable clause " reading substantially as follows:

"Any loss under this policy that may be proved due the assured shall be payable to the assured and Cumberland Savings Bank Co., Cumberland, Ohio, subject, nevertheless, to all the terms and conditions of the policy."

These riders were attached by the local agent of petitioners, to the Sun and Norwich policies after their issuance, and to the Home policy on the date it was issued.

To the petitioners' defense of violation of the chattel mortgage clause, the respondent answered that the loss payable clause, as a matter of law, constituted a waiver and a recognition of the interest of the bank as chattel mortgagee. He averred, moreover, that by custom in the community in which the policies were written such clause was so understood and was customarily used for the purpose of giving the insurers' consent to chattel mortgages. In the alternative he insisted that under § 9586 of the Ohio General Code a person who solicits insurance and procures the application therefor must be held to be the agent of the party, company or association thereafter issuing a policy upon such application or a renewal thereof, anything in the application or policy to the contrary notwithstanding; and that if the loss payable clause did not have the effect for which he contended, nevertheless the agent who wrote the policies and attached the clause knew of the existence of the chattel mortgage, and his knowledge was to be imputed to the insurers and constituted an agreement on their part that notwithstanding the mortgage the insurance should remain in force.

To this petitioners replied by denying any such custom as was alleged, and quoted a provision appearing in each of the policies that " no officer, agent, or other representative of this Company shall have power to waive any pro-

vision or condition of this Policy except such as by the terms of this Policy may be the subject of agreement endorsed hereon or added hereto; and as to such provisions and conditions no officer, agent, or representative shall have such power or be deemed, or held to have waived such provisions or conditions unless such waiver, if any, shall be written upon or attached hereto."

The Court of Appeals held that under the law of Ohio the chattel mortgage was valid as between respondent and the bank, and would have avoided the policies except for the loss payable clause, which it held either by its own force or by its customary use for the purpose constituted a waiver and consent on the part of the insurers. On this ground it affirmed the judgments.

We are of opinion that upon the uncontradicted facts the petitioners made out a valid defense to the suits and were entitled to directed verdicts in their favor. The provision in the policies prohibiting chattel mortgages without consent endorsed on the policy is intended to reduce the moral hazard, and is a valid stipulation, the violation of which constitutes a complete defense. *Hunt* v. *Springfield Fire & Marine Insurance Co.*, 196 U. S. 47. The loss payable clause above quoted is not informative to the insurer of the existence of a chattel mortgage, but performs the office of protecting a creditor of the insured who has no interest in the insured property by mortgage or otherwise against the eventuality of fire loss.

In *Bates* v. *Equitable Insurance Co.*, 10 Wall. 33, a policy contained a covenant that if the property were sold the insurance should cease unless consent of the insurer to the sale were given in writing. The policy was endorsed, " payable, in case of loss, to E. C. Bates," to whom it appeared the insured goods had been sold. There was no evidence except the endorsement of any consent to accept Bates, the purchaser, as the party whose interest

was insured. It was said of the practice of making such loss payable endorsements. [p. 37.]:

"It is a mode of appointing that the loss of the party insured shall be paid by the company to such third person. This transaction is a very common mode of furnishing a species of security by a debtor to his creditor, who may be willing to trust to the debtor's honesty, his skill and success in trade, but who requires indemnity against such accidents as loss by fire, or the perils of navigation. . . .

"In the face of this frequent use of the two indorsements on the policy, it cannot be held that they imply of themselves a knowledge of the sale or a consent to insure the purchaser."

We are of opinion that the doctrine announced in the *Bates* case is controlling here; that the attachment of a loss payable clause is entirely consistent with the condition against change of interest, or encumbrance of the insured property, and does not constitute a waiver of the condition against sale or mortgaging, or a consent thereto.

We find nothing in the record evidencing any customary use in the community where the policies were written of a loss payable clause as a consent to change of title or encumbrance of the subject-matter of the insurance, beyond the fact that in the three instances in question the agent of the insurers did, with alleged knowledge of the chattel mortgage, attach to each of the policies a loss payable rider. This is clearly insufficient to establish a custom or to change the normal office of such an endorsement.

The respondent insists that laying the loss payable endorsement out of view, the uncontradicted evidence that Bracken, the insurers' local agent, knew of the chattel mortgage, constitutes a consent on the part of the insurers that the policies should remain in force notwithstanding the encumbrance. He claims that for this pur-

pose the knowledge of the agent is that of his principals. Reliance is placed upon § 9586 of the Ohio General Code, which makes a person who solicits or takes an application for insurance the agent of the company, "anything in the application or the policy to the contrary notwithstanding." He asserts that the decisions of the Ohio courts interpreting this statute are to the effect that the agency thus imputed to the solicitor extends to all matters of contract with respect to the policy, including consent to the alteration of its terms.

On its face the statute does not go so far. We have examined the authorities cited and fail to find that they give it any such force or effect.[2] They do not, as respondent claims, define the scope of the agency created by the statute, but leave it to be defined by applicable principles of common law. In the present cases the policy limits its scope, and we think the written contract must control.

For the reasons given it is clear that the petitioners did not waive the condition against encumbrance nor consent to the giving of the chattel mortgage, and that there was nothing in the situation which deprived them of their defense based upon that condition.

In the petition for the writ of certiorari and in the argument other defenses made by the petitioners, which the courts below overruled, were pressed upon us. It is unnecessary to consider them, as what we have said disposes of the cases.

The judgments must be reversed and the causes remanded for further proceedings in accordance with this opinion.

*Reversed.*

---

[2] *Foster* v. *Insurance Co.*, 101 Ohio St. 180; 127 N. E. 865; *Hartford Fire Ins. Co.* v. *Glass,* 117 Ohio St. 145; 158 N. E. 93.