**NIAGARA FIRE INS. CO. OF NEW YORK, N. Y., v. RALEIGH HARDWARE CO., Inc., and nine other cases.**

Nos. 3326–3335.

Circuit Court of Appeals, Fourth Circuit.

Jan. 10, 1933.

706

Stanley C. Morris, of Charleston, W. Va. (Steptoe & Johnson, James M. Guiher, and J. Horner Davis, 2d, all of Clarksburg, W. Va., on the brief), for appellants.

James H. McGinnis and Ben H. Ashworth, both of Beckley, W. Va. (David D. Ashworth, of Beckley, W. Va., on the brief), for appellee.

Before PARKER, NORTHCOTT, and SOPER, Circuit Judges.

PARKER, Circuit Judge.

These are appeals in ten actions at law instituted to recover on fire insurance policies and heard together in the court below. The plaintiff was the Raleigh Hardware Company and the defendants were insurance companies that had issued policies on the store building of plaintiff, which was destroyed by fire on April 9, 1931. In each case there was verdict and judgment for the plaintiff, and the defendants have appealed. The appeals present four points: (1) Whether the court below erred in holding as a matter of law that plaintiff was not barred of recovery for failure to file proofs of loss within the time limited by the policies; (2) whether the court erred in instructing the jury that it might return a verdict for the full amount of the policies if it found that there was a total loss within the meaning of the valued policy statute of West Virginia; (3) whether there was prejudicial error in the admission and rejection of testimony; and (4) whether there was error in refusing to set aside the verdict and grant a new trial.

The policies, which are in the form prescribed by the statute of West Virginia (Acts of 1923, ch. 18, § 68), require that "the insured shall, within sixty days after the fire, unless such time is extended in writing by this Company, render to this Company a proof of

loss, signed and sworn to by the insured, stating," etc. A subsequent clause provides that, "No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity unless all the requirements of this policy shall have been complied with, nor unless commenced within twelve months next after the fire." The fire occurred, as stated above, on April 9th. The proofs of loss were not filed until June 13th, more than sixty days thereafter. There is uncontradicted evidence, however, that the fire continued to burn in the basement of the building for a week or more after it began. And, following prompt notice by plaintiff that the fire had occurred, the companies sent adjusters, who as late as the latter part of May were negotiating with plaintiff in an attempt to arrive at an adjustment of the loss.

■ We agree with plaintiff that under no interpretation of the policy would the sixty-day period for furnishing proofs of loss begin to run until after the fire had sufficiently abated to allow a full inspection of the property for the purpose of determining the extent of the loss. National Wall Paper Co. v. Associated Manufacturers' Mutual Fire Ins. Co., 175 N. Y. 226, 67 N. E. 440; Slocum v. Saratoga & Washington Fire Ins. Co., 149 App. Div. 867, 869, 134 N. Y. S. 72. Such inspection was of particular importance in this case; for a close view of the basement, where the fire was burning, and of the foundations of the walls left standing was necessary to determine whether the loss was total within the meaning of the valued policy law of West Virginia. The evidence as to the length of time the fire was burning was sufficient to warrant the conclusion that the proofs of loss were furnished within the time limited by the policy; but this would be a question for the jury. The failure to submit it to the jury is immaterial, however, in the view that we take of the West Virginia law which we shall presently discuss.

■ And we agree, also, that the defendants would be held to have waived the condition requiring that proofs of loss be furnished within sixty days, if failure to comply with such condition resulted in a forfeiture under the laws of West Virginia. They entered into negotiations with plaintiff looking to an adjustment of the loss. In the course of the negotiations they were furnished by plaintiff with plans and specifications of the burned building and other information usually contained in proofs of loss. By their investigation of the fire and through their dealings with plaintiff, they secured all the informa-

tion which the proofs were designed to furnish; and the negotiations for an adjustment were, in the absence of notice to the contrary, sufficient ground for plaintiff's assuming that no further or more formal proofs of loss were necessary. Plaintiff's delay in furnishing the proofs of loss was in a very real sense, therefore, the result of the conduct of the defendants, and it would be unconscionable to allow defendants to take advantage of the delay. If the provision of the policy requiring proofs of loss within sixty days were a condition of recovery, defendants would be held to have waived it by their conduct, or, what is the same thing, would be estopped to assert it. Concordia Ins. Co. v. School District, 282 U. S. 545, 550, 51 S. Ct. 275, 75 L. Ed. 528; Id. (C. C. A. 10th) 40 F.(2d) 379; Firemen's Ins. Co. v. Brooks (C. C. A. 6th) 32 F.(2d) 451, 65 A. L. R. 909; Continental Ins. Co. v. Fortner (C. C. A. 6th) 25 F.(2d) 398; Lusk v. American Cent. Ins. Co., 80 W. Va. 39, 91 S. E. 1078; American Ins. Co. v. Dannehower, 89 Ark. 111, 115 S. W. 950; Helvetia Swiss F. Ins. Co. v. Edward P. Allis Co., 11 Colo. App. 264, 53 P. 242; Teasdale v. City of New York Ins. Co., 163 Iowa, 596, 145 N. W. 284, Ann. Cas. 1916A, 591 and note; 26 C. J. 403; 14 R. C. L. 1348.

■ But the determination of the question as to whether the proofs of loss were furnished in accordance with the terms of the policy does not depend upon the question of waiver or nice inquiries into the duration of the fire; for under the law of West Virginia failure to file proofs of loss within the sixty days limited by the policy merely delays and does not bar action. Raleigh Hardware Co. v. Williams, 106 W. Va. 85, 144 S. E. 879, 880; Smith Ins. Agency v. Hamilton Fire Ins. Co., 69 W. Va. 129, 71 S. E. 194; Rheims v. Standard Fire Ins. Co., 39 W. Va. 672, 20 S. E. 670. The provision of the statutory form relating to proofs of loss was construed in the recent case of Raleigh Hardware Co. v. Williams, supra; and in the light of what was said in that case there can be no question as to the rule applicable in West Virginia. The court, speaking through Judge Maxwell, said: "It is not provided in the policy that it shall be void, if proofs are not filed within the stipulated period; but there is a general provision that no suit shall be brought on the policy unless all the requirements of the policy have been complied with, and unless such suit be instituted within twelve months next after the fire. The only effect of noncompliance with the requirement for proof of loss is to postpone the right of action of the insured. 'Although a policy

of fire insurance requires that proof of loss shall be furnished within 60 days after the fire occurs, unless the time be extended by the company, but there is no provision therein forfeiting the policy for failure to comply with this requirement, the effect of such provision is to postpone right of action until such proof be furnished, but not to wholly destroy all right of recovery thereon.' Smith Insurance Agency v. Hamilton Fire Insurance Co., 69 W. Va. 129, 71 S. E. 194, pt. 6, syl. Proofs of loss merely fix the time when a loss becomes payable and when an action may be maintained to enforce a liability. Rheims v. Standard Fire Insurance Co., 39 W. Va. 672, 20 S. E. 670. See, also, Munson v. German Insurance Co., 55 W. Va. 423, 47 S. E. 160, and Adkins v. Globe Fire Insurance Co., 45 W. Va. 384, 32 S. E. 194. These cases go no further in this phase than to hold that the filing of proofs of loss is a condition precedent to action on the policy. This holding is in conformity with general authority."

It is true that in matters of general insurance law, we are not bound by state decisions. Fountain & Herrington v. Mutual Life Ins. Co. (C. C. A. 4th) 55 F.(2d) 120; Washburn & Moen Mfg. Co. v. Reliance Marine Ins. Co., 179 U. S. 1, 21 S. Ct. 1, 45 L. Ed. 49; Swift v. Tyson, 16 Pet. 1, 10 L. Ed. 865. But this is not a question of general insurance law. It is a question of the interpretation of language embodied in a statute of West Virginia; for the policies of insurance, by express provision of the statute, embody language which the statute prescribes. An interpretation of the language of the policies, therefore, is an interpretation of the language of the statute itself; and it is well settled that we are bound by the interpretation which the courts of a state place upon the language of its statutes. Elmendorf v. Taylor, 10 Wheat. 152, 6 L. Ed. 289; Burgess v. Seligman, 107 U. S. 20, 2 S. Ct. 10, 27 L. Ed. 359; Savings Bank of Richmond v. National Bank of Goldsboro (C. C. A. 4th) 3 F.(2d) 970, 39 A. L. R. 1374.

The duty of the federal courts to follow state decisions in the interpretation of state statutes is too well settled to admit of serious discussion. The rule has been followed, not only with respect to statutes dealing with local matters, but also with respect to those affecting general commercial law, such as the Negotiable Instrument Law, which was dealt with in the case of Savings Bank of Richmond v. National Bank of Goldsboro, supra. And the rule is followed as to state statutes dealing with insurance. Iowa Life Ins. Co. v. Lewis, 187 U. S. 335, 355, 23 S. Ct. 126, 47 L. Ed. 204; Concordia Ins. Co. v. School District, supra, 282 U. S. 545, 552, 51 S. Ct. 275, 75 L. Ed. 528; Union Indemnity Co. v. Dodd (C. C. A. 4th) 21 F.(2d) 709, 55 A. L. R. 735; Parr v. Ins. Co. (D. C.) 44 F.(2d) 567; and see Sun Ins. Office v. Scott, 284 U. S. 177, 182, 52 S. Ct. 72, 76 L. Ed. 229. Defendants point to decisions in which federal courts have followed the general law instead of local decisions in construing policies, in states where the form of policy is prescribed by local statute. See Niagara Fire Ins. Co. v. Pospisil (C. C. A. 8th) 52 F.(2d) 709, 79 A. L. R. 404, and Bank of South Jacksonville v. Hartford Fire Ins. Co. (D. C.) 1 F.(2d) 43. In none of these, however, was there express decision of the point which is raised here, viz., whether a decision by a state court on the meaning of a provision of a statutory form of policy must be followed as an interpretation of the statute. As indicated above, we think that this question must be answered in the affirmative. When the Legislature of a state prescribes the language which a policy must contain, judicial interpretation of that language is in effect judicial interpretation of the statute itself, and becomes a part of the statute. Not to follow such interpretation by the Supreme Court of the state, therefore, would be to ignore the statute and to enforce a contract different in terms from that which the Legislature of the state has prescribed.

We come then to the second question, i. e., whether the court erred in instructing the jury that it might return a verdict for the full amount of the policies upon a finding that there was a total loss within the meaning of the valued policy statute of West Virginia. Defendants do not controvert the fact that there is evidence to show a total loss within the meaning of that statute, but they contend that the statute was repealed by implication by the enactment of the uniform policy law of 1923 and was not re-enacted until the adoption of the Code of West Virginia in 1931.

The valued policy statute was enacted by the Legislature of West Virginia in 1899. Its apparent purpose was to avoid litigation over the amount of damages sustained by an insured and to prevent the evils arising from overinsurance. It was carried forward in the Code of 1923 as section 40a of chapter 34, and is as follows: "§ 40a. Liability of fire insurance company in case of total or partial loss.—All fire insurance companies doing business in this state shall be liable, in case of total loss by fire or otherwise, as stat-

ed in the policy on any real estate insured, for the whole amount of insurance stated in the policy of insurance upon said real estate; and in case of partial loss by fire or otherwise, as aforesaid, of the real estate insured, the basis upon which said loss shall be computed, shall be the amount stated in the policy of insurance effected upon said real estate, and the insured shall have the right to enforce his claim for said loss in any court having jurisdiction. (Acts 1899, c. 33.)"

The statute upon which defendants rely as repealing this provision is section 68 of chapter 18 of the Acts of 1923, which prescribes the uniform fire insurance policy for use in the state. The provision of the statutory policy upon which they rely is as follows: " * * ` Does insure ...... and legal representatives, to the extent of the actual cash value (ascertained with proper deductions for depreciation) of the property at the time of loss or damage, but not exceeding the amount which it would cost to repair or replace the same with material of like kind and quality within a reasonable time after such loss or damage."

 Even if there were nothing before us except the valued policy statute and the uniform policy statute of 1923, we would not think that the former had been repealed by the latter. It is elementary that statutes are to be construed together when possible, and that repeals by implication are not favored. 25 R. C. L. 918, 919; Beck v. Cox, 77 W. Va. 442, 87 S. E. 492. The valued policy statute has relation to a specific matter; insurance on real estate. The language of the uniform policy has relation to insurance generally. Both will be given effect if the general language of the uniform policy be construed as applying generally, and the valued policy statute be construed as creating an exception to its general application. The rule is well settled that "where there are two statutes upon the same subject, the earlier being special and the later general, the presumption is, in the absence of an express repeal, or an absolute incompatibility, that the special is intended to remain in force as an exception to the general." Washington v. Miller, 235 U. S. 422, 428, 35 S. Ct. 119, 59 L. Ed. 295; Rodgers v. U. S., 185 U. S. 83, 87–89, 22 S. Ct. 582, 584, 46 L. Ed. 816; Townsend v. Little, 109 U. S. 504, 512, 3 S. Ct. 357, 27 L. Ed. 1012.

The rule stated in Sedgwick on the Construction of Statutory and Constitutional Law, p. 98, quoted with approval in Rodgers v. U. S., supra, is as follows: "The reason

and philosophy of the rule is, that when the mind of the legislator has been turned to the details of a subject, and he has acted upon it, a subsequent statute in general terms or treating the subject in a general manner, and not expressly contradicting the original act, shall not be considered as intended to affect the more particular or positive previous provisions, unless it is absolutely necessary to give the latter act such a construction, in order that its words shall have any meaning at all."

But in addition to this well-settled rule of interpretation, we have the decisions in West Virginia, the opinion of the Code revisers and the opinion of the Legislature all supporting the conclusion to which it leads. Eight years after the valued policy statute was enacted, the Legislature of West Virginia, by section 68 of chapter 77 of the Laws of 1907, provided that no fire insurance policy should be issued on property within the state except in the form used by fire insurance companies incorporated under the laws of the state of New York, with such changes and additions as the Insurance Commissioner might deem proper. This New York standard form used the same language as is used in the form incorporated in the statute by the act of 1923; and in Hinkle v. North River Insurance Company, 70 W. Va. 681, 75 S. E. 54, the position was taken that the effect of the act of 1907 in adopting a form of insurance policy containing this language was to effect a repeal by implication of the valued policy law. The Supreme Court of Appeals of West Virginia, however, took the opposite view, holding that the Legislature by adopting a general form of fire insurance policy did not intend to repeal the valued policy act which dealt with a special matter. The same reasoning applies to the act of 1923. There can be no difference, so far as a question of this nature is concerned, between setting forth a form of policy in a statute and providing by statute that policies shall be issued in a certain well-known form.

This was the view taken by the revisers of the Code of 1931, and it was evidently the view taken by the Legislature in adopting the Code with both the valued policy statute and the uniform policy statute included therein. The revisers, in a note to the valued policy section of the 1931 Code (33-4-9), said: "Revisers' Note—The portion of this section coming between the semicolons is a redraft. In Hinkle v. North River Insurance Co., 70 W. Va. 681 [75 S. E. 54], the court decided that this section was not repealed by § 68, c. 77, Acts 1907 (Code 1923, c. 34, § 68), although the latter section prescribed the New York

form of policy limiting the liability to the actual cash value of the property insured. Said § 68 was amended and reenacted by Acts 1923, c. 18, § 68, by way of incorporating a literal form of the policy, but since the amended section seems to do no more by way of literal incorporation than the original section did by way of reference, it is believed that § 40a, c. 34, Code 1923, was not affected by the amendment made in 1923 and it is therefore retained."

We have considered the cases from other jurisdictions to which our attention is called by defendants; but we feel bound by the decision in the case of Hinkle v. North River Ins. Co. And, even if the question were an open one, we do not think that under the authorities which we have cited we would be justified in holding that there had been a repeal by implication of the valued policy statute.

We can deal briefly with the third point. The following question was asked the witness J. O. Freeman: "In your opinion, would a reasonably prudent man use any portion of these walls, either the brick and tile walls or the basement walls, in rebuilding a building of like kind and character?" He answered: "I would tear out what is there and rebuild it of new material all the way through if it were mine." The record shows that a motion was made to strike out the answer, but does not show the ground of the motion. It is suggested here that the question was objectionable because it did not include as an hypothesis that the reasonably prudent man be uninsured, and that the answer was not responsive because the witness answered as to what he would do and did not confine his answer to the conduct of the reasonably prudent man. But before defendants can rely upon these points here, they must have made them in the court below, not by general objection or motion to strike out, but in a manner specifically calling the attention of the trial judge to the point made. But the exception, if properly taken, would not justify the granting of a new trial. The testimony objected to, when considered with the other testimony of the witness and a great mass of other testimony bearing upon the question of total loss, could not have misled the jury or affected the result of the case in any way.

Another group of exceptions relates to the examination of one Cooper. He had made an estimate of damage and cost of replacement, and on cross-examination, being asked what valuation he placed on the damage to a certain party wall, placed it at $6,-000. Defendants then offered in evidence a report of arbitrators signed by the witness, in which the damage of an adjoining owner in this party wall had been fixed at a very much smaller amount. The court excluded the report of the arbitrators on the ground that it would unnecessarily incumber the record, but ruled that defendants might cross-examine the witness with regard thereto. The witness was then questioned as to his valuation of the party wall, and admitted that he had valued it in the arbitration at $3,615. On redirect examination he testified that, in the arbitration, he had included only the wall to the line of the adjoining owner, and that the $6,000 valuation included its entire length. Defendants then asked to cross-examine the witness further on this matter, and the court refused to permit it.

We do not think that either of these rulings constitutes reversible error. When the court permitted cross-examination on the arbitrators' report and the witness admitted the valuations placed on the wall therein, there was no reason for incumbering the record with the report. The matter of further cross-examination was a matter resting in the sound discretion of the trial judge, and while we think that, under the circumstances, he might well have permitted further cross-examination, we are not prepared to hold that he was guilty of an abuse of discretion in not doing so. In addition to this, any contradictory statement with relation to the value of the party wall was a matter going merely to the weight of the witness' testimony; and, even if his entire testimony as to the value of the wall were disregarded, the remaining items to which he testified would exceed the total of the insurance policies by a considerable amount. We have considered the case of Patriotic Ins. Co. v. Franciscus (C. C. A. 8th) 55 F.(2d) 844, but the situation in that case was very different from the situation here.

We need not discuss the fourth point. Nothing is better settled in the federal practice than that the setting aside of a verdict and the granting of a new trial is a matter resting in the sound discretion of the trial judge, and that we will not interfere with this discretion in the absence of abuse. There was no abuse in this case. Parties cannot obtain from an appellate court a review of the facts or a ruling on the weight of evidence by assigning error with respect to a ruling on a motion for a new trial.

There was no error, and the judgments below will be affirmed.

Affirmed.