**UNITED STATES QUARRY TILE CO. v. MASSACHUSETTS BONDING & INS. CO.**

**No. 6458.**

Circuit Court of Appeals, Sixth Circuit.

June 8, 1934.

ALLEN, Circuit Judge, dissenting.

———◆———

Arthur Baldwin, of Cleveland, Ohio, and J. L. Cable, of Lima, Ohio (Cable & Cable, of Lima, Ohio, and Garfield, Cross, Mac-Gregor, Daoust & Baldwin, of Cleveland, Ohio, on the brief), for appellant.

H. J. Crawford, of Cleveland, Ohio (Thomas M. Kirby, Melville Reese Dill, and Squire, Sanders & Dempsey, all of Cleveland, Ohio, on the brief), for appellee.

Before HICKS, SIMONS, and ALLEN, Circuit Judges.

SIMONS, Circuit Judge.

The appeal involves the construction of an indemnity bond given by the appellee to insure the appellant's bank deposits, and a claim of estoppel asserted by the assured, based upon a construction of the bond made by a general agent of the surety and relied upon by the assured. The judgment below upon trial to the court without a jury was for the surety in the principal amount involved, and the assured appeals.

In 1930 the assured had both a checking and a savings deposit account in the Harter Bank of Canton, Ohio. Mr. Cable, its president, being solicited for business by W. L. Shuttleworth, associated with a general insurance agency in Canton, expressed a desire for a depository bond to cover funds in the Harter Bank, explaining that the bulk of the deposit was in a savings account. The bank refusing to join in the application, Shuttleworth sought a company which would write the bond without the bank's indemnity, and communicated with H. C. Williams, the general agent of the surety in Cleveland, who held the title of manager of its Ohio department. Shuttleworth testified he was advised by Williams that the surety's form of bond covered any type of deposit. The first bond written by Williams was upon the wrong form, so a new bond was substituted, which is the one here involved. Its provisions, concerning the meaning of which there is controversy, are the preamble and the so-called operating clause printed in the margin,[1] it being the assured's contention that the operating clause controls, and that the bond covers both demand and time deposits, while the surety's position is that both clauses must be read in pari materia, and that so read the coverage is limited to demand deposits, i. e., those subject to the depositor's draft or check as distinguished from savings accounts or certificates of deposit.

For reasons that will presently appear, we pass the question as to whether Shuttleworth was the agent of the surety or the agent of the assured. It becomes necessary, however, by reason of what followed the issuing of the bond, to ascertain whether there is an ambiguity in its terms with respect to the coverage, though it is not in our view necessary to resolve the ambiguity.

On July 13, 1931, the assured transferred from its savings account in the Harter Bank to a certificate of deposit the sum of $46,-344.87. With the reasons for this transfer we are not concerned. At the time of the transfer two banks had failed in Canton, and

[1] "Whereas, United States Quarry Tile Company hereinafter called the 'Assured' has deposited and proposes to deposit certain funds in open account in the name of United States Quarry Tile Company in The George D. Harter Bank hereinafter called the 'Bank' subject to its draft and check;

"Now, Therefore, in consideration of the sum of Five Hundred and no/100 Dollars ($500.00) as an annual premium the Massachusetts Bonding and Insurance Company, a corporation of Boston, Massachusetts, hereinafter called the 'Surety' hereby agrees that it will within ten (10) days after the receipt of proof satisfactory to it, of a loss hereunder, reimburse the 'Assured' for any amount not exceeding Fifty Thousand and no/100 Dollars ($50,000.00), which the 'Bank' shall be legally bound to pay on due demand, such failure being due solely to the insolvency or suspension of payments by the 'Bank.' "

Cable·made inquiry of Shuttleworth as to whether the certificate of deposit was covered by the bond. Upon being advised that it was, he urged Shuttleworth to "get that in black and white for me. I want to be doubly sure that it is covered under our bond." Shuttleworth, at Cable's request, communicated with Froehde, Canton agent of the surety, who wrote to Williams asking for assurance that the depository bond covered any kind of deposit. To Froehde's inquiry Williams replied by letter of July 29, 1931, printed in the margin.[2] This letter was immediately delivered to Cable, and relying upon it, the assured refrained from cashing the certificate of deposit or transferring its funds to a checking account, it being undisputed that at this time the bank was redeeming certificates without respect to their due date. On October 22, 1931, the Harter Bank failed, the assured having at the time a balance of $17,368.12 in its .checking account, and a certificate of deposit reduced by withdrawals to $37,345.80. The surety indemnified it for a portion of the checking account, and the court below gave judgment for the balance, as to which there has been no appeal. The question here is therefore limited to the liability of the surety for the unpaid amount represented by the certificate of deposit, within the coverage of the bond.

▉ We think it clear both upon authority and upon every principle of equity and justice, that in view of the assurance contained in the Williams letter, the surety is now estopped from denying that the bond indemnified the assured against loss on its certificate of deposit. Williams was a general agent of the surety. He was general manager of its Cleveland office, and was held out to be its manager for the Ohio district. There was no agent in Ohio superior to him. The inquiry as to the coverage of the bond was specific and direct. It was made while the assured still had opportunity to protect itself, either by a new bond, a transfer of its funds to a checking account, or withdrawal. The letter

was written with the knowledge that it would be relied upon, and was more than a mere categorical response to the inquiry. It was persuasive in character, and by its terms clearly designed to set at rest any fears of the assured as to the protection afforded by the bond.

▉ have given careful consideration to those cases which hold it to be competent and reasonable for insurance companies to make it a matter of condition in their contracts that their agents shall not be deemed to have authority to alter them or contradict their express terms. Northern Assurance Company v. Grand View Building Association, 183 U. S. 308, 22 S. Ct. 133, 46 L. Ed. 213; Sun Insurance Office v. Scott, 284 U. S. 177, 52 S. Ct. 72, 76 L. Ed. 229; Hartford·Fire Insurance Company v. Nance, 12 F.(2d) 575 (C. C. A. 6). We do not think the principle applicable here. The Williams letter was not an attempt to alter or vary the terms of a written contract, but was clearly a contemporaneous construction of it upon a point that may well be considered obscure.

It will be noted that the operating clause of the bond contains an absolute obligation on the part of the surety to reimburse the assured for an amount not exceeding $50,000, which the bank should be legally bound to pay in the event of failure being due to the insolvency or suspension of payment by the bank. The only qualification upon the deposits secured is that they are amounts which the bank is obligated to pay on "due demand." There is no limitation of the indemnity to funds subject to draft or check. To ascertain such limitation it becomes necessary to read into the operating clause the recitals of the preamble. In this situation the court would be required to determine the meaning of the terms embodied in the contract, if no other principle controlled. As was said by the Supreme Court in Continental Life Insurance Company v. Chamberlain, 132 U. S. 304, 10 S. Ct. 87, 89, 33 L. Ed. 341: "The purport of the word 'insurance' in the

---

[2] "Mr. B. E. Froehde, First National Bank Bldg., Canton, Ohio.

"Dear Sir: We have your letter of July 22nd relative to the deposit of the United States Quarry Tile Company advising us that the depositor has transferred its funds from a savings account to a certificate of deposit. This action by the depositor does not affect the bond in any way as the bond itself does not mention the nature of the deposit, but simply guarantees that the deposit of $50,000 will be returned. It is unnecessary to make any reference to the kind of deposit that is made whether it be checking, savings or certificate of deposit. The bond further states that we are guaranteeing the funds belonging to the depositor and that the bank will promptly pay all checks and drafts lawfully drawn by the depositor against the funds so deposited.

"Trusting this 'will answer your inquiry, I am,

"Yours very truly, ·

"[Signed] Howard C. Williams, Mgr."

question, 'Has the said party any other insurance on his life?' is not so absolutely certain as, in an action upon the policy, to preclude proof as to what kind of life insurance the contracting parties had in mind when that question was answered. Such proof does not necessarily contradict the written contract. * * * The answer of 'No other,' having been written by its own agent, invested with authority to solicit and procure applications, to deliver policies, and, under certain limitations, to receive premiums, should be held as properly interpreting both the question and the answer as to other insurance."

Judge Denison's commentary in Letta v. Cincinnati Iron & Steel Company, 285 F. 707, 711 (C. C. A. 6), we think has general application: "A party to a contract, who knows that the other party is acting under a misconstruction, but permits that action to go on prejudicially, is bound by that misconstruction." We have repeatedly held that where there is any doubt as to the meaning of terms in an agreement, the practical construction put upon them by the parties themselves will control. Federal Surety Company v. A. Bentley & Sons Co. (C. C. A.) 51 F.(2d) 24, 78 A. L. R. 1041; Updegraff v. United Fuel Gas Co. (C. C. A.) 67 F.(2d) 431. This is not so where contracts are plain in their terms. Norton Iron Works v. Standard Slag Co., 13 F.(2d) 622 (C. C. A. 6).

That the contract here involved is obscure and presents an ambiguity is apparent from an analysis of it, and if anything were wanting to demonstrate that, it can be read to incorporate the interpretation of either litigant, the Williams letter, with its detailed and specific reasoning, would supply it, having in mind that Williams was an experienced insurance man, presumably familiar with the forms in use by his company and their meaning. Clarksburg Trust Company v. Commercial Casualty Ins. Company, 40 F.(2d) 626, 629 (C. C. A. 4), is not contrary to the view here expressed. The surety's obligation in that case was unequivocally limited to deposits "in an account subject to check." It might be said parenthetically, that were we to follow Judge Parker's reasoning to its conclu-

sion, we might well be obliged to give consideration to the assured's petition to reform the contract (the petition having been consolidated below with the suit at law upon the bond), for, if the bond does not cover time deposits, there is substantial evidence in the record that it did not express the mutual intention of the parties when it was written. We need not, however, go so far.

The surety's contention that because Williams had express power of attorney to execute the bond, and because a copy of such authority was attached to the policy when delivered to the assured, the limitations therein contained negative authority on the part of Williams to bind the surety by the representations in his letter, is, we think, without merit. The letter did not purport, as already indicated, to alter the terms of the contract, and the limitation in the written power of attorney must be considered with reference to the acts authorized by virtue of it. Williams' authority otherwise to represent the company in the general conduct of its business was not derived from that instrument. The authority to execute bonds might well have been conferred upon some other representative of the company in Ohio, without in any way affecting the status of Williams as its general agent.

Nor was the Williams letter merely a legal opinion upon which the assured had no right to rely. It was much more than that. It was a representation of fact as to the construction which the surety and its agents put upon the contract. Certainly this is the clear implication of the letter, in view of the inquiry to which it was response. It would be difficult indeed to say from what source a more authoritative construction of doubtful language in an insurance contract could be obtained by one who is in doubt as to the protection afforded by it than from the general agent of the surety in his home state.

The judgment below is reversed, and the case remanded for further proceedings consistent herewith.

ALLEN, Circuit Judge, thinks the judgment should be affirmed.