## EDDY et al. v. NATIONAL UNION INDEMNITY CO.*
### No. 7394.

Circuit Court of Appeals, Ninth Circuit.
July 1, 1935.

*Rehearing granted Oct. 21, 1935.

546

Sullivan, Roche, Johnson & Barry, Theo. J. Roche, Edward I. Barry, and Eustace Cullinan, Jr., all of San Francisco, Cal., for appellants.

A. E. Cooley, Louis V. Crowley, and Frederic E. Supple, all of San Francisco, Cal., for appellee.

Before WILBUR and GARRECHT, Circuit Judges.

WILBUR, Circuit Judge.

This is an appeal from a judgment of the District Court of the United States for the Northern District of California in an action upon a policy of automobile public liability insurance of the National Indemnity Company, issued on May 13, 1931, to Fred R. Carfagni.

Fred R. Carfagni, the assured, was the owner of a Lincoln sedan automobile covered by the policy and while operating said automobile in San Francisco on June 22, 1931, struck and killed Mary Elizabeth Eddy. The appellants, heirs at law of the deceased, Mary Elizabeth Eddy, recovered a judgment against the assured for her death in the sum of $15,900 and costs in the superior court of the city and county of San Francisco. The judgment being wholly unsatisfied, the heirs at law then brought this action against the appellee. The appellee defended on the ground that the insured had breached a warranty in the application for the insurance wherein it was represented and warranted that no company had canceled or refused to issue any kind of automobile insurance for the insured during the past three years. A jury was waived.

There were no assignments of error based on the admission or rejection of evidence. The questions properly involved on the appeal are limited to whether or not the findings of fact by the trial court support the judgment [Stanley v. Supervisors, 121 U. S. 535, 7 S. Ct. 1234, 30 L. Ed. 1000; United States v. Tyrakowski (C. C. A.) 50 F.(2d) 766]; and whether or not the judgment is supported by substantial evidence. Independence Indemnity Co. v. Sanderson (C. C. A.) 57 F.(2d) 125, 129; Pacific Sheet Metal Works v. Californian Canneries Co. (C. C. A.) 164 F. 980, 982.

The trial court found that five policies of automobile insurance issued to the insured within three years prior to the issuance of the policy in suit had been canceled prior to the issuance of the policy in suit, and also prior to the issuance of the first policy to the assured by the appellee June 1, 1929. As to a policy issued to the insured July 27, 1928, by the Home Accident and Home Fire Insurance Company of Little Rock, Ark., canceled as a bad risk on August 11, 1928, and the policy issued to the insured by the Pacific Employers Insurance Company, which is not an automobile insurance policy, the trial court found that the defendant had knowledge of the cancellation thereof at the time of issuing the policy in suit, but that it had no knowledge of the details or particular reasons which caused the automobile insurance companies to cancel the policies of the assured, and that the appellee had no knowledge at the time it issued the policy in suit (May 13, 1931), of the cancellation

of an automobile insurance policy issued to the insured July 27, 1928, by the Travelers Insurance Company and canceled September 15, 1928, that the appellee had no knowledge concerning cancellation of an automobile insurance policy issued to the insured by the Washington Underwriters Company canceled October 5, 1928, as an undesirable risk, or of a policy issued to the assured by the Western States Insurance Company which was canceled as an undesirable risk on June 1, 1929.

The warranty in the policy in suit is found in the following provisions of the application therefor: "J. Declarations. The several statements in the declarations are hereby made a part of this policy and are warranted by the insured to be true. * * *

"9. No company has cancelled or refused to issue any kind of automobile insurance for the assured during the past three years except as follows: No exceptions."

The policy contained the following provision as to waiver: "Waiver. No provision or condition of this policy shall be waived or altered, except by written endorsement attached thereto and signed by the president or secretary; nor shall knowledge possessed by any agent, or by any other person, be held to effect a waiver of or change in any part of this contract. No person, firm or corporation shall be deemed an agent of the company unless such person, firm or corporation is authorized in writing as such agent by the president or secretary."

The trial court found that the warranty in question was never waived nor altered, and that there was no writing or written indorsement waiving or changing the warranty. The trial court also found that at the time the policy in question was issued the appellee believed in and relied upon the representations of the assured.

Under the circumstances, there was no implied waiver of the warranty as to any of the cancellations resulting from the knowledge of the officers because there was no written agreement thereto as required by

the provision of the policy under the rule established by the Supreme Court. Mutual Life Ins. Co. of New York v. Hilton-Green, 241 U. S. 613, 36 S. Ct. 676, 60 L. Ed. 1202; see Ætna Life Ins. Co. v. Moore, 231 U. S. 543, 34 S. Ct. 186, 58 L. Ed. 356; Ætna Life Ins. Co. v. France, 91 U. S. 510, 23 L. Ed. 401; Jeffries v. Economical Mut. Life Ins. Co., 22 Wall. 47, 22 L. Ed. 833; Northern Assurance Co. v. Grand View Building Ass'n, 183 U. S. 308, 317, 22 S. Ct. 133, 46 L. Ed. 213; Sun Insurance Office v. Scott, 284 U. S. 177, 52 S. Ct. 72, 76 L. Ed. 229. In its latest decision (Sun Insurance Office v. Scott, supra), it was insisted that the indorsement of a clause making a loss payable to the assured and to the Cumberland Savings Bank Company (the chattel mortgagee) constituted a consent on the part of the insurers that the policies should remain in force, notwithstanding the encumbrances. The policy contained a nonwaiver clause similar to the one above quoted from the policy in the case at bar. The Supreme Court there held that this nonwaiver provision was a limitation upon the power of the agents to make waivers and that the provision of the Ohio General Code (section 9586) making the insurance solicitor an agent of the company did not conflict with or control the limitation upon the authority of the agents of the insurance company contained in the nonwaiver clause, and, consequently, that the provision against encumbrances not consented to by the insurance company was not waived.

Appellant also contends: "The provision of the policy purporting to limit the authority of the agent has been modified by express statute in California, so that his conduct and knowledge constituted either a waiver by the company of the alleged breach of warranty or an estoppel of the company to set up the alleged breach of warranty in avoidance of liability."

This contention is based upon section 633d of the California Political Code, set out in the margin,[1] and upon a provision of the policy making the law of California dominant over the provisions of the

---

[1] Section 633d of the California Political Code:

"No insurance company or other insurer, authorized to transact business in this state, shall make, write, place or cause to be made, written or placed, any policy or duplicate policy or general or floating policy or contract of indemnity or suretyship or renewal of any thereof covering risks located in this state at the time of the execution of any such policy or contract, except through, or after a risk has been approved in writing by, an agent of the company residing in this state and regularly authorized to transact such business therein, who shall countersign all such

policy. We find nothing in this statute which conflicts with the provision of the policy requiring a waiver to be in writing indorsed upon the policy. None being indorsed thereon in writing, the question of whether or not the local agent would have had power to execute such a waiver is immaterial (see Sun Insurance Office v. Scott, 284 U. S. 177, 52 S. Ct. 72, 76 L. Ed. 229, supra).

This warranty that there had been no cancellation of other automobile insurance policies was incorporated in the policy by its terms as an express warranty by the assured. The acceptance of the policy by the assured with that representation contained therein made it as effectively a part of the contract as if the words "No exceptions" had been entered by the assured. See Lumber Underwriters v. Rife, 237 U. S. 605, 35 S. Ct. 717, 59 L. Ed. 1140; Northwestern Nat. Ins. Co. v. McFarlane (C. C. A.) 50 F.(2d) 539. Moreover, as such a representation was made by the assured through his broker to the appellee at the time his first policy was issued, the company was justified in relying upon that representation in formulating and issuing a new policy in the absence of any representation by the assured to the contrary. 3 Joyce on Ins., § 2005, p. 3358; Syndicate Ins. Co. v. Bohn (C. C. A.) 65 F. 165, 171, 27 L. R. A. 614; Maryland Casualty Co. v. Campbell (C. C. A.) 255 F. 437; Solomon v. Federal Ins. Co., 176 Cal. 133, 167 P. 859; Lumber Underwriters v. Rife, 237 U. S. 605, 35 S. Ct. 717, 59 L. Ed. 1140; Northwestern Nat. Ins. Co. v. McFarlane (C. C. A.) 50 F.(2d) 539, supra. The assured is bound by the warranty. The ap-

pellant does not question that there had been a cancellation of automobile insurance policies held by the assured within three years prior to the issuance of the policy in suit upon the ground that the risk was considered a bad risk; consequently the warranty has been breached. The findings support the judgment.

It is claimed by the appellant that the assured made no representation or warranty, but that the answer, "No exceptions," was written in the application by the agents of the appellee.

It appears from the evidence on that subject that the assured procured a policy of automobile insurance from the appellee in 1929. This policy having expired, a new one was issued in 1930, and at the expiration of that policy the policy in suit was issued. These policies were issued in pursuance of the request of an insurance broker, Mr. Payne, who acted on behalf of the insured. The original application in 1929 was made over the telephone. In response to an inquiry addressed to the broker by the agent of the appellee, it was stated by him that there had been no cancellation of automobile insurance. In pursuance of this information, the application was filled out by the agent of the insurance company and the answer to question No. 9, "No exceptions," was entered therein. The two subsequent policies were issued in the same manner except that no new representation was made. The original representation applied to them (supra).

Appellant contends that by the collection of the premium specified in the policy the appellee waived the warranty as to

policies or contracts of indemnity or suretyship or renewals of any thereof so issued, and receive or be credited with the premium thereon when paid, and who shall also receive any commission paid or allowed on such premium, and no such company or insurer shall by its officers, agents or managers, not residents of this state, write policies or contracts of insurance or suretyship covering risks located within this state at the time of the execution of the policy or contract upon blanks previously countersigned by an agent in this state.

"Nothing in this act shall be construed to prevent any such insurance or surety company or other insurer authorized to transact business in this state, from binding at offices outside of this state risks covering in this state; provided, that policies or contracts therefor are thereafter

issued by agents of said company or other insurer, who are residents of this state, as specified above, and who shall receive or be credited with the premium thereon when paid and who shall also receive any commission paid on such premium.

"Companies or other insurers writing all policies issued and renewal certificates thereof at offices outside of this state shall be considered as complying with this section; provided, all policies and renewal certificates covering risks in this state are countersigned after being issued by an agent of the company or other insurer resident within this state, authorized to do so, who shall keep a record of policies and certificates, so countersigned, including the premium thereon, and such companies and other insurers shall in all respects comply with the conditions of this section."

previous cancellations which were known to the appellee at the time of payment. To apply this rule, which is followed in many of the states, would render nugatory the provisions of the policy requiring a waiver to be effective to be in writing.

█ It is claimed that the judge erred in finding that there were cancellations of automobile insurance other than those by the Home Accident Insurance Company.

This contention is largely based upon the proposition that the policies referred to in the finding of the trial judge as having been canceled were not formally canceled in accordance with the provisions of the respective policies with reference to the method of cancellation. The evidence supports the finding.

E. H. Payne, the broker who secured th policy in suit, testified to the replacement of the various policies which the trial court found had been canceled. This witness had testified there was no difference between a replacement and a cancellation, that "when a company wishes to retire from a risk that they feel is not satisfactory, they phone or write to the broker to replace the insurance in some other company before they send a cancellation notice, and the policy is usually taken up and replaced with some other company, without any notice of cancellation being given by the company, and that is the case with most of these cancellations. You will notice that these cancellations were mostly during the period of two or three months, and besides you will notice this same car was insured for three years straight without any cancellation, and during the period of this time for these few months, there was trouble with losses, and the companies thought that the risk was not desirable, and asked me to replace it. The only one which I recall which cancelled was the Home Accident. They wanted it cancelled and requested that the policy be taken up, and the risk placed with some other company."

The trial court was justified in its express and in its implied finding that these replacements were cancellations within the meaning of the warranty against cancellations in the policy in suit.

█ It is contended by appellant that the appellee "after learning of facts giving it the alleged right to cancel the policy of insurance, did acts consistent with recognizing the policy as being still in force, and so thereby lost whatever right it theretofore had to rescind."

To support this claim of waiver the appellant relies upon the evidence that the appellee collected its premium and that on June 23d, the day after Mrs. Eddy was killed, a representative of appellee's loss department took the car of the assured to an automobile repair shop for the purpose of having it repaired; that the insurance broker of the assured agreed thereto, and that the appellee subsequently refused to pay the bill therefor. The insurance company also required a report of loss from the assured. This was all prior to knowledge by the appellee of the three of the five cancellations. The insurance company for the first time denied liability under the policy on June 30, 1931, immediately upon learning of the cancellation of the five policies mentioned, and upon ascertaining the facts immediate steps were taken to rescind the insurance policy and return the premium of $176.82 which had been collected from the assured.

█ Appellant claims that the conduct of the appellee in connection with the loss amounts to an implied waiver of the breach of warranty. The appellee relies upon the provision of the policy requiring that all waivers be reduced to writing, and the appellant claims that this provision requiring waivers to be in writing can be and was waived by the appellee's conduct after the loss. It is unnecessary to determine this much mooted question for the acts did not operate to waive unknown breaches of the warranty; if any waiver resulted from such acts it was a waiver only as to the two cancellations known to the insurance company. Georgia Home Ins. Co. v. Rosenfield (C. C. A. 6) 95 F. 358; see Cooley's Brief on Insurance, 4187, 4272, 4354, 4469; Fidelity-Phenix Fire Ins. Co. v. Handley (C. C. A.) 296 F. 902.

Judgment affirmed.