## SAUL v. NEW YORK LIFE INS. CO.

### No. 8402.

Circuit Court of Appeals, Fifth Circuit.

Nov. 8, 1937.

A. S. Grove, of Atlanta, Ga., for appellant.

Grover Middlebrooks, of Atlanta, Ga., for appellee.

Before SIBLEY, HUTCHESON, and HOLMES, Circuit Judges.

SIBLEY, Circuit Judge.

Joseph Saul sought to recover of New York Life Insurance Company disability benefits included in a policy of life insurance, and his petition was dismissed on demurrer.

The pertinent language of the policy is: "Upon receipt at the Company's Home Office before default in payment of premium of due proof that the insured is totally and presumably permanently disabled and that such disability occurred after the insurance took effect and before its anniversary on which the insured's age at nearest birthday is sixty years, the following benefits will be granted: (a) Income payments, (whose details need not be stated); (b) The Company will waive payment of any premium falling due after approval of said proof and during such disability. * * * In the event of default in payment of premium after the insured has become totally disabled the policy will be reinstated upon payment of the arrears of premium with interest at five percent, provided due proof * * * is received by the Company not later than six months after said ·default,

and the benefits under this section shall then be the same as if said default had not occurred." Facts stated in the petition are that total and presumably permanent disability occurred January 1, 1931. The insured was ignorant of the disability provisions in his policy, then about five years old, and he continued to pay his annual premiums until that due January 21, 1933. For that premium he paid some cash, and gave a note for the balance, the terms of which he claims were misrepresented by the local agent. The note was not paid at maturity March 21, 1933, and, in April, Saul was notified that his policy had lapsed. His sons in his behalf had some negotiations concerning this premium, but the premium was never more than one-sixth paid. The premium of January 21, 1934, was not paid. In March, 1934, he was advised by an outsider that he had rights under his policy and he employed counsel, who on March 21 made claim for disability benefits and asked blanks to make formal proofs. These blanks were refused, and liability denied. Physicians' statements were nevertheless submitted, but the claim was formally rejected in May and the suit begun in July, 1934. Neither in the correspondence nor the suit was there any offer to pay arrearages of premium and cure the default under the last provision above quoted. The suit attempted to excuse the filing of proofs of disability by asserting that the local agent knew of it and said that no disability rights existed and that the company had so stated to him, coupled with the ignorance and confidence in the agent of the assured.

█ It will be noticed that disability income is not promised on the occurrence of disability, of which proof must be made or waived, but only on receipt of due proof at the home office before default in premium. Default in premium occurred January 21, 1933, or at the expiration of thirty days' grace, unless the note in controversy paid that premium. If it did pay that premium, default occurred January 21, 1934, or at latest at the end of the grace period of thirty days. No proof was ever submitted to the home office until the attorney wrote thither on March 21, 1934. These premiums were not waived notwithstanding the insured was disabled when they fell due because waiver was promised only on approval of the proofs. The insured has not brought himself within the terms of his contract. Bergholm v. Peoria Life Ins. Co., 284 U.S. 489, 52 S.Ct. 230, 76 L.Ed.

416; Avery v. New York Life Ins. Co. (C. C.A.) 67 F.(2d) 442; Egan v. New York Life Ins. Co. (C.C.A.) 67 F.(2d) 899; Reingold v. New York Life Ins. Co. (C.C.A.) 85 F.(2d) 776.

█ He claims that proofs were waived by the company's absolute refusal to pay. Future proofs were thereby waived, but not those the failure to present which during the life of the policy was the ground of rejecting the claim.

█ There is an effort to set up that the local agent in effect rejected the claim in 1931 and 1932 by saying there was no ground for a claim and that the company had told him there was none. It is not alleged that the company in fact had said so. The application for the policy stated that it was agreed that only the president, vice president, second vice president, secretary, or treasurer of the company can make, modify, or discharge contracts, or waive any of the company's rights or regulations; and the policy provides that no agent is authorized to waive forfeitures or make or modify or discharge contracts or extend the time for paying the premium. Notwithstanding the ignorance of Saul and his confidence in the local agent, his contract with the company stands unaffected, the agent having no actual authority to change or waive any provision of it.

█ Reliance is put upon section 2443 of the Georgia Civil Code of 1910, defining who are agents of an insurance company and including persons who like this local agent deliver a policy or collect a premium. The definition is a part of the act of 1887, which sought to make insurance companies and their agents qualify and obtain certificates before the insurance commissioner, and to pay certain fees, and to punish them for acting without doing so. See Jalonick v. Greene County Oil Co., 7 Ga.App. 309, 66 S.E. 815. It made certain the persons subject to that law, but did not attempt to define the authority of any agent. The provisions of the application and policy touching the authority of agents are not affected by this statute. Sun Ins. Office v. Scott, 284 U.S. 177, 52 S.Ct. 72, 76 L.Ed. 229; Mutual Life Ins. Co. v. Hilton Green et al., 241 U.S. 613, 36 S.Ct. 676, 60 L.Ed. 1202; Fidelity-Phenix Fire Ins. Co. v. Handley (C.C.A.) 296 F. 902; Maryland Casualty Co. v. Campbell (C.C.A.) 255 F. 437.

Irrespective of the effect of the contested note which was given for the 1933

premium but never paid, and the effort otherwise to adjust that premium made by Saul's sons, the default in the premium due January 21, 1934, prevents the proofs presented in March and April, 1934, from coming within the policy promise.

Judgment affirmed.